[No. 9038.   In Bank. — May 26, 1886.]

# WILLIAM HOLLIS, Appellant, v. J. P. MEUX, Respondent.

LIBEL — INSOLVENCY — OPPOSITION TO DISCHARGE — SPECIFICATIONS — AT-
TORNEY. — An attorney who, in the course of his employment, files
specifications of opposition to an insolvent's discharge, alleging that the
insolvent had been privy to making false and fraudulent entries in his
books, with intent to defraud creditors, and had sworn falsely in relation
to his estate, and while acting in a fiduciary capacity fraudulently con-
verted property to his own use, of which facts he had been informed by
his client, cannot be held for libel. The publication is absolutely privi-
leged.

APPEAL from a judgment of the Superior Court of the
city and county of San Francisco.

The facts are sufficiently stated in the opinion of the
court.

*W. H. Fifield,* for Appellant.

*Arthur Rodgers,* and *Saffold & Meux,* for Respondent.

McKEE, J.—A demurrer was sustained to the complaint
in this case, on the ground that it did not contain facts
sufficient to constitute a cause of action. The plaintiff de-
clined to amend; judgment was entered against him, and
from the judgment this appeal is taken.

The object of the action was to recover damages for a
libel.

On the face of the complaint it appears that the plain-
tiff had filed in the Superior Court of the city and county
of San Francisco his voluntary petition in insolvency,
to be discharged from his debts and liabilities as an in-
solvent debtor under the insolvency law; that a corpora-
tion existed which was known as "The Real Estate and
Building Association"; that there was another corpora-
tion known as "The Real Estate Associates," of which
plaintiff was the president and business manager; that
the last-named corporation had proven a claim against

the estate of the insolvent debtor, and opposed his discharge; that in connection with the claim the defendant acted as attorney for the corporation creditor on the occasion of filing its opposition to the discharge of the debtor, and that, in the specifications of opposition which were filed, the defendant maliciously published concerning the plaintiff certain false and scandalous matters, with intent to impute to him the crimes of embezzlement and perjury.

Under the insolvent law, "any creditor" is authorized to oppose the discharge of a debtor by filing specifications in writing of the grounds of his opposition, and the law provides that "no discharge shall be granted, . . . . if the debtor shall have ·sworn falsely in his affidavit annexed to his petition, schedule, inventory, . . . . in relation to any material fact concerning his estate or his debts, or to any other material fact, . . . . or if . . . . he has been guilty of fraud contrary to the true intent of this act," etc.   (Ins. Act of 1880, sec. 49.)   The law also provides: "No debt created by fraud or embezzlement of the debtor, . . . . or while acting in a fiduciary character, shall be discharged."   (Ins. Act of 1880, sec. 52.)

The grounds set forth in the specifications are:—

1. That the insolvent debtor had been privy to the making of a false and fraudulent entry upon the books of the Real Estate and Building Association, with the intent to defraud his creditors.

2. That he swore falsely upon an examination in the course of the proceedings in insolvency in relation to a material fact concerning his estate and indebtedness.

3. That the indebtedness of the debtor to the Real Estate Association was created by him while acting in a fiduciary capacity; namely, as its president, director, manager, and trustee; and

4. That while acting in such capacity he fraudulently converted to his own use a large amount of real and personal property of the said corporation.

Upon these grounds the creditor opposed the discharge of the debtor; and as the specifications were prepared and filed under the insolvent law by the defendant as the attorney of the opposing creditor, in the course of the judicial proceedings commenced to obtain his discharge, it is claimed that their publication was privileged.

"A privileged publication is one made:—

" 1. In the proper discharge of an official duty;

" 2. In any legislative or judicial proceeding, or in any other official proceeding authorized by law;

" 3. In a communication without malice to a person interested therein, by one who is also interested, or by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information;

" 4. By a fair and true report, without malice, of a judicial, legislative, or other public official proceeding, or of anything said in the course thereof." (Civ. Code, sec. 47.)

In *Kidder* v. *Parkhurst*, 3 Allen, 393, where a libel was alleged to have been published on the occasion of presenting a complaint to a grand jury, it is said: "The complaint appears to have been made in the regular course of justice, and the decisions, ancient and modern, are uniform, that no proceeding in a regular course of justice is to be deemed an actionable libel. . . . . In *Hill* v. *Miles*, 9 N. H. 14, it was said by Parker, C. J., that an action for a libel cannot be sustained for a proceeding before a court having jurisdiction of the subject-matter if the process was instituted under a probable belief that the matter alleged was true, and with the intention of pursuing it according to the course of the court, even if the matter turns out to be wholly false."

The rule of the English law is, that such a publication is absolutely privileged. That is to say, that a defamatory statement made by writing, or in words, in the

course of an inquiry regarding the administration of the law is privileged whether it was or not made in bad faith, or was or not relevant to the inquiry. Thus, in an action brought against a solicitor for words spoken by him before a court of justice, whilst he was acting as advocate for a person charged in a court with an offense against the law, the Court of Appeal, on appeal from a judgment of the Court of Queen's Bench, held that the action was not maintainable. "No action of any kind," says the court, "will lie for words spoken in a course of law, even if they were spoken from an indirect motive and to gratify malice."

"This rule," it adds, "is founded upon public policy which requires that a judge, in dealing with the matter before him, counsel, in preferring or resisting a legal proceeding, and a witness, in giving evidence, oral or written, in a court of justice, shall do so with his mind uninfluenced by the fear of an action for defamation or a prosecution for libel. The question of malice, *bona fides*, and relevancy cannot be raised; the only question is, whether what is complained of has been said in the course of the administration of law. If that be so, the case against a counsel must be stopped at once." (*Munster* v. *Lamb*, 23 Am. Law Reg. 12.)

The rule is not carried to that extent by the American courts. Generally, a privileged publication is conditional or limited, and not absolute.

Says Chief Justice Gray, in delivering the opinion of the court in *Hoar* v. *Wood*, 3 Met. 198: "The privilege is limited by this, that a party or counsel shall not avail himself of his situation to gratify private malice by uttering slanderous expressions, either against a party, witness, or third person, which has no relation to the cause or subject-matter of the inquiry. Subject to this restriction, it is, on the whole, for the public interest, and best calculated to subserve the purposes of justice, to allow counsel full freedom of speech in conducting the causes

and advocating and sustaining the rights of their constituents."

So in *Gilbert* v. *People,* 1 Denio, 45, Beardsly, J., says: "Whatever may be said or written by a party to a judicial proceeding, or by his attorney, solicitor, or counsel therein, if pertinent and material to the matter in controversy, is privileged, and consequently lays no foundation for a private action or a public prosecution. The general language of elementary writers is, that whatever occurs in the regular course of justice is privileged (Hawk. P. C., b. 1, c. 73, sec. 8; 3 Chit. Crim. Law, 869; 1 Saund. 131 [1]; 1 Russell on Crimes, 307; Bac. Abr., tit. Libel, A, 4); and by which they intend to indicate the practice I have stated. If what is said or written is pertinent and material to the controversy, the protection to the parties and those who represent them (for all stand on the same ground) is absolute and unqualified, and no one shall be permitted to allege that it was done with malice. But this is the extent of the privilege; for if a party or his agent will pass beyond the prescribed limit to asperse and vilify another by word or writing, he is without protection; and, as in other cases, must abide the consequences of his own misconduct. If slanderous words are used he is a slanderer, and if he offends in writing he is a libeler, and may be prosecuted both civilly and criminally as such. (*Hastings* v. *Lusk,* 22 Wend. 410; *Hodgson* v. *Scarlet,* 1 Barn. & Ald. 232; *Ring* v. *Wheeler,* 7 Cow. 725; *Thorn* v. *Blanchard,* 5 Johns. 508.)"

And in *Wyatt* v. *Buell,* 47 Cal. 624, where it appeared that the occasion of an application to this court for an extension of time to file a transcript on an appeal was availed of to publish in the petition, filed for that purpose, scandalous matters which were wholly foreign to the application, this court held that the publication was not privileged.

Whether the legislature intended to change the rule as announced in *Wyatt* v. *Buell,* by the amendment of

section 47 of the Civil Code, which took effect on the 1st of July, 1874, is not necessary to be determined. For in the view that we take of the case as presented by the complaint, the words, written in the course of plaintiff's proceedings in insolvency, though they were such as imputed to the plaintiff crimes, and if spoken elsewhere would import malice and be actionable, are not actionable under either an absolute or conditional rule of privilege.

If the publication was absolutely privileged, the action was not maintainable. If it was conditionally privileged, then the only question arising upon the complaint is reducible to this: Does it appear by the complaint that the grounds of opposition as published in the specifications, to the discharge of the plaintiff as an insolvent debtor, were pertinent and material to the cause or subject of inquiry before the court in which the specifications were filed?

We think the question must be answered in the affirmative. The question to be tried was whether the plaintiff was entitled to be discharged from his debts under the insolvent law. The matters contained in the specifications of opposition had certainly a bearing upon the question. If the defendant, in the course of his employment as attorney for his client, was informed that the plaintiff acted in a fiduciary capacity, or committed the acts of fraud, as charged in the specifications, in contracting any of the debts for which he became insolvent, it was his duty, in resisting for his client, as an opposing creditor, the application of the debtor, to publish the facts. Their publication on the occasion was absolutely privileged. Malice cannot be predicated of it. No one is permitted to allege that what was rightly done in a judicial proceeding was done with malice. (*Warner* v. *Payne*, 2 Sand. 201; *Suydam* v. *Moffatt*, 1 Sand. 462; *Garr* v. *Selden*, 4 N. Y. 94.)

Judgment affirmed.

Thornton, J., Ross, J., Sharpstein, J., Morrison, C. J., and McKinstry, J., concurred.

Rehearing denied.