[No. A078959. First Dist., Div. Four. July 14, 1998.]

LELAND B. EVANS et al., Cross-complainants and Respondents, v. PILLSBURY, MADISON & SUTRO et al., Cross-defendants and Appellants.

**COUNSEL**

Pillsbury, Madison & Sutro, James K. Lynch, Robert M. Westberg, Thomas V. Loran III, Walter R. Allan and Emmett C. Stanton for Cross-defendants and Appellants.

Nick T. Reckas for Cross-complainants and Respondents.

**OPINION**

**POCHÉ, Acting P. J.**—Subdivision (a) of Civil Code section 1714.10[1] directs that "No cause of action against an attorney for a civil conspiracy" shall be filed until the trial court has made an evidence-based determination that "the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail . . . ." The statute's subdivision (c) provides that it "shall not apply" to situations where the attorney has an independent legal duty to the pleader or has violated a legal duty for the attorney's financial gain.

Before us is the appeal of an attorney and his law firm that a conspiracy cause of action alleged against them does not establish either of section 1714.10, subdivision (c)'s exceptions and is therefore governed by subdivision (a). Concluding that appellants are largely correct, we reverse.

## BACKGROUND

The genesis of this dispute is the formation and capitalization of Sterling One, a limited partnership intended to be involved with air carrier service. Serebrodin, Inc., is Sterling's general partner. Leland B. Evans and Ken Tran are limited partners in Sterling and are directors of Serebrodin. Sterling commenced operations on December 7, 1995. On December 22, 1995, a smoldering dispute about the nature of Evans's and Tran's investments in Sterling (i.e., whether they were simple equity partners or also secured creditors) blew up. Several days earlier Attorney Jonathan Joseph had agreed on behalf of his law firm, Pillsbury, Madison & Sutro (PMS), to represent

---

[1]Statutory references are to the Civil Code unless otherwise indicated.

Sterling in the dispute with Evans and Tran.[2] The boardroom battle over finances led to Sterling becoming insolvent and ceasing operations in January of 1996. This litigation began when PMS filed a complaint for declaratory relief on behalf of Serebrodin and Sterling later that month.

Evans and Tran responded with a cross-complaint for damages against Serebrodin, Sterling, and others. Causes of action were alleged against PMS and Joseph for professional negligence, intentional and negligent interference with contractual relations, and intentional and negligent interference with prospective economic advantage. Evans and Tran moved to disqualify PMS from representing Sterling, on the ground that because they were Sterling partners PMS had a conflict of interest. The motion was denied.

Serebrodin and Sterling then amended their complaint with minor changes. Evans and Tran filed an amended cross-complaint that was considerably different from their initial pleading. Two causes of action against Joseph for negligent misrepresentation were now alleged, and causes of action against Joseph and PMS for professional negligence, breach of fiduciary duty, and "conspiracy."

PMS and Joseph interposed a general demurrer on the ground that none of the counts of the cross-complaint stated a cause of action. As to the conspiracy count, they also demurred on the ground that the amended cross-complaint had been filed without compliance with section 1714.10. The trial court sustained the demurrers without leave to amend with respect to the negligent misrepresentation counts against Joseph, and the professional negligence and breach of fiduciary counts against Joseph and PMS. The demurrer to the civil conspiracy cause of action (i.e., the 20th cause of action) was overruled.[3]

PMS and Joseph filed a timely notice of appeal from "the order . . . overruling in part the[] demurrer."

REVIEW

Ordinarily, an order *overruling* a demurrer to *one* of five causes of action would not constitute an appealable order. (E.g., 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, §§ 78, 113, pp. 132-134, 178.) Appeal is authorized, however, because the cause of action alleged a civil conspiracy among appellants and others and is therefore governed by section 1714.10, which provides:

---

[2]Joseph was a minor officer of Serebrodin and had been a limited partner in Sterling since August.

[3]No reason for this ruling was stated in the written order.

"(a) No cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client, shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes the claim for civil conspiracy to be filed after the court determines that the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action. The court may allow the filing of a pleading claiming liability based upon such a civil conspiracy following the filing of a verified petition therefor accompanied by the proposed pleading and supporting affidavits stating the facts upon which the liability is based. The court shall order service of the petition upon the party against whom the action is proposed to be filed and permit that party to submit opposing affidavits prior to making its determination. The filing of the petition, proposed pleading, and accompanying affidavits shall toll the running of any applicable statute of limitations until the final determination of the matter, which ruling, if favorable to the petitioning party, shall permit the proposed pleading to be filed.

"(b) Failure to obtain a court order where required by subdivision (a) shall be a defense to any action for civil conspiracy filed in violation thereof. The defense shall be raised by the party charged with civil conspiracy upon that party's first appearance by demurrer, motion to strike, or such other motion or application as may be appropriate. Failure to timely raise the defense shall constitute a waiver thereof.

"(c) This section shall not apply to a cause of action against an attorney for a civil conspiracy with his or her client, where (1) the attorney has an independent legal duty to the plaintiff, or (2) the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain.

"(d) This section establishes a special proceeding of a civil nature. Any order made under subdivision (a), (b), or (c) which determines the rights of a petitioner or an attorney against whom a pleading has been or is proposed to be filed, shall be appealable as a final judgment in a civil action. . . ."

As specifically allowed by subdivision (b), appellants used a demurrer to raise the issue of respondents' lack of compliance with section 1714.10, subdivision (a). Respondents defended their amendment by invoking subdivision (c). The trial court's order overruling appellants' demurrer determines

the parties' rights under subdivisions (a) and (c). The order is therefore made "appealable as a final judgment in a civil action" by subdivision (d).[4]

Section 1714.10 is one of a number of statutes which impose extraordinary procedural requirements depending on the nature of the plaintiff's claim or the identity of the defendant sued. (See *College Hospital, Inc.* v. *Superior Court* (1994) 8 Cal.4th 704, 712-713 [34 Cal.Rptr.2d 898, 882 P.2d 894] and statutes cited; see also Code Civ. Proc., §§ 391-391.7 [vexatious litigants].) ▮ Section 1714.10 was intended to weed out the harassing claim of conspiracy that is so lacking in reasonable foundation as to verge on the frivolous. (See *Castro* v. *Higaki* (1994) 31 Cal.App.4th 350, 356 [37 Cal.Rptr.2d 84]; *Hung* v. *Wang* (1992) 8 Cal.App.4th 908, 919-920, 931 [11 Cal.Rptr.2d 113].) The weeding tool is the requirement of prefiling approval by the court, which must be presented with a verified petition accompanied by a copy of the proposed pleading and "supporting affidavits stating the facts upon which the liability is based"; the pleading is not to be filed until the court has determined ". . . the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action." (§ 1714.10, subd. (a).)

There is no question that the civil conspiracy cause of action as alleged in respondents' cross-complaint was one "arising from an[] attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client" within the plain language of section 1714.10 subdivision (a). The relevant allegations are as follows: "Commencing on a date not know[n] to Cross-complainants, JOSEPH, from his position as only one of four officers of SEREBRODIN, knew or reasonably should have known of the agreement [to induce EVANS and TRAN to invest $600,000 into STERLING ONE by falsely representing to EVANS and TRAN that $500,000 of their investment would be protected from loss by security agreements covering that portion of the investment], and agreed to assist the other coconspirators to carry out the agreement, including using the legal services of PM&S to create an amendment to the partnership agreement, induce EVANS and TRAN to sign the amendment under false representations of the purpose of the agreement, to then assert that the [security protection agreements] were not enforceable, and to sue EVANS and TRAN in an effort to coerce them into abandoning their rights under the agreements. [¶] Cross-complainants are informed, believe and thereon allege that PM&S and DOES . . . ,

---

[4]In addition to section 1714.10, appellants' demurrer also challenged the conspiracy count on the ground that it dealt with conduct covered by the litigation privilege of section 47. Our direction to the trial court to strike the pleading to which the demurrer was directed moots appellants' contention that its privilege claim should have been sustained.

Nor will we address respondents' arguments seeking to overthrow portions of the trial court's order sustaining appellants' demurrers to other causes of action because subdivision (d) does not authorize review of matters apart from issues related to section 1714.10.

through their partner, JOSEPH knew or in the exercise of reasonable care should have know[n] of the conspiracy and have ratified the actions and conduct of JOSEPH."

■    Section 1714.10 has been construed as requiring the pleader to allege compliance with the statute or risk falling to a demurrer. (See *Pierce* v. *Lyman* (1991) 1 Cal.App.4th 1093, 1107-1110 [3 Cal.Rptr.2d 236].) Respondents did not assert that a prefiling order was obtained. However, subdivision (c) states that section 1714.10 "shall not apply" in two situations. Respondents contend they are covered by both of the exceptions set out in subdivision (c).

The first exemption exists where "the attorney has an independent legal duty to the plaintiff." (§ 1714.10, subd. (c)(1).) The quoted exemption obviously speaks to a relationship beyond that of attorney-client. Respondents argue that appellants' representation of Sterling is also the source of independent duties to respondents as limited partners of Sterling. The allegations cited by respondents in their brief pertain to events occurring after PMS agreed to represent Sterling, or appear to have no obvious pertinence to establishing some kind of relationship that will serve as the basis for an independent legal duty. A careful reading of the amended cross-complaint discloses no allegations that can reasonably be construed as raising the issue of independent duties appellants in either individual or representative capacities owed to respondents as limited partners of Sterling.[5] Respondents have therefore failed to demonstrate that the first exemption is applicable.

The second exemption exists where "the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain." (§ 1714.10, subd. (c)(2).) The allegations respondents discuss in their brief complain of the following: (1) about the time PMS agreed to represent Sterling, Serebrodin officers discussed respondents' threat to sue if the security protection agreements were not honored. "In those discussions,

---

[5]Respondents made this identical argument when they unsuccessfully moved to have PMS disqualified from acting as Sterling's counsel in the litigation. Respondents request that we take judicial notice of the declaration by Joseph filed by appellants in opposition to the disqualification motion.

Courts reviewing rulings on general demurrers can consider "facts that may *properly* be judicially noticed." (*Crowley* v. *Katleman* (1994) 8 Cal.4th 666, 672 [34 Cal.Rptr.2d 386, 881 P.2d 1083], italics added.) Joseph's declaration is a part of the trial court's file and thus a judicial record of which permissive judicial notice could be taken. (Evid. Code, § 452, subd. (d).) Nevertheless, the declaration is not a subject for mandatory judicial notice, and the trial court was not asked to take judicial notice of the declaration in connection with appellants' demurrer. The declaration is therefore not a proper subject for judicial notice. (Evid. Code, § 459, subd. (a).) Respondents' request is denied accordingly.

JOSEPH stated . . . that he . . . would be first in line to sue EVANS"; (2) Joseph "falsely represented" the import of an amendment to the Sterling partnership agreement and "fraudulently induced" respondents to sign the amendment; and (3) Joseph urged the president of Serebrodin to repudiate an agreement to preserve respondents' claimed security interest. Respondents told the trial court that this would work to Joseph's financial benefit because the result would be that their "investment would not have the security interest which his investment did not have any claim to and so that he and PM&S would be paid a large fee for representing the company."

It is obvious that the developed target of the cross-complaint is Joseph, not PMS. It is equally clear that PMS had no connection with the dispute until it was engaged as counsel for Sterling, and that its involvement thereafter occurred in the course of that legal representation. In neither their cross-complaint nor their brief do respondents specify how, in the words of the second exemption, what PMS did went "beyond the performance of a professional duty to serve the client and involve[d] a conspiracy to violate a legal duty in furtherance of the attorney's financial gain." Respondents do not identify what "legal duty" PMS violated in the course of representing Sterling. As to PMS, no matter how liberally the amended cross-complaint is construed, it does not establish that respondents qualify for the second of the section 1714.10's exceptions to the prefiling requirement.

With respect to Joseph, a large portion of events and conduct alleged deal with the period when he, but not PMS, had dealings with respondents about Sterling. An easy characterization is that Joseph was not acting as an attorney, but as an investor and corporate officer who just happened to be an attorney. There was, in the language of section 1714.10, subdivision (c)(2), no client to whom, as an attorney, he had "a professional duty to serve." The cross-complaint does not spell out how what Joseph is alleged to have done would inure to his financial gain, but the remarks respondents made to the trial court are a bit more helpful. The idea that Joseph would benefit if respondents were not treated as secured creditors is not self-explanatory, at least if Sterling remains solvent and operating. But respondents alleged that Sterling went bust and that Joseph is not only an attorney with PMS, he is also a limited partner of Sterling. If respondents' expectations that their $600,000 investments were secured did, as they allege, prove incorrect, their financial losses could be substantial. Liability for Sterling's debts could reach limited partners such as Joseph and respondents, depending on whether they had participated in control of Sterling's business. (See Corp. Code, § 15632, subd. (a).) That is a matter that cannot be resolved from a pleading. The amended cross-complaint supports an inference that Joseph was active in how Sterling was run, before PMS was engaged as Sterling's counsel. A further inference is that what Joseph did will cost respondents

money. Because these inferences are reasonable, they will be assumed in respondents' favor. (E.g., *Coleman* v. *Gulf Ins. Group* (1986) 41 Cal.3d 782, 789, fn. 3 [226 Cal.Rptr. 90, 718 P.2d 77, 62 A.L.R.4th 1083].)

Thus, neither of section 1714.10 subdivision (c)'s exceptions applies to PMS. The consequence is that respondents were obliged to comply with the prefiling procedures of subdivision (a). Their failure to do so puts them "in violation thereof." (§ 1714.10, subd. (b).) On the other hand, one of subdivision (c)'s exceptions will reach respondents' complaint against Joseph. The difficulty is that the tainted and the permissible were conjoined in a single cause of action in respondents' amended cross-complaint. Ordinarily respondents would be allowed to proceed against Joseph, but not PMS. Section 1714.10, however, establishes a different response. The statute's subdivision (a) directs that *"No cause of action* against an attorney for a civil conspiracy . . . *shall be included in a complaint or other pleading* unless the court enters an order allowing the pleading that includes the claim for civil conspiracy to be filed . . . ." (Italics added.) Insofar as section 1714.10 is concerned, respondents' civil conspiracy count must survive or fall as a single unit. In this case it fails because it includes PMS, which is entitled to the protections of the prefiling procedures. The conspiracy cause of action was therefore an unauthorized filing, no better than a courtroom trespasser, and subject to a motion to strike. Sustaining the special section 1714.10 demurrer in these circumstances has the same effect as granting a motion to strike an unauthorized pleading: the subject of the demurrer is no longer a pleading and may not be treated as one. (E.g., Code Civ. Proc., § 436, subd. (b) [court may strike "all or any part of any pleading not . . . filed in conformity with the laws of this state"]; 5 Witkin, Cal. Procedure, *supra*, Pleading, § 940, p. 398 ["the demurrer destroys the complaint as a pleading"]; 49 Cal.Jur.3d, Pleading, § 220, p. 668.) Appellants' demurrer should have been sustained.

The order is reversed with directions to the trial court to strike the 20th cause of action alleged in the amended cross-complaint. Appellants shall recover their costs of appeal.

Reardon, J., and McGuiness, J., concurred.