[No. C029428. Third Dist. Oct. 26, 1999.]

SACRAMENTO BREWING CO., INC., Plaintiff and Appellant, v. DESMOND, MILLER & DESMOND et al., Defendants and Respondents.

COUNSEL

Law Offices of Mark C. Leas and Mark C. Leas for Plaintiff and Appellant.

Lewis & Bacon, Steven A. Lewis and Damon M. Thurston for Defendants and Respondents.

## OPINION

**KOLKEY, J.**—This appeal raises the issue whether the litigation privilege under Civil Code section 47, subdivision (b) should apply to a "slip of the pen" that misidentifies an innocent party as the debtor in a bankruptcy proceeding—a misidentification claimed to be defamatory.

The plaintiff in this case, Sacramento Brewing Co., Inc. (SBC), argues that the litigation privilege under Civil Code section 47, subdivision (b) should not apply to the defendants' erroneous identification of SBC as the debtor in the caption of a notice of motion filed in a bankruptcy proceeding, since it was a complete stranger to the proceeding. We disagree and hold that the erroneous identification of a party in an otherwise privileged court filing does not affect the privilege's application. The trial court sustained without leave to amend a demurrer to SBC's defamation complaint on the basis of both the litigation privilege under Civil Code section 47, subdivision (b) and the qualified privilege under Civil Code section 47, subdivision (c).[1] We affirm the ensuing judgment of dismissal.

### FACTS

The following facts are derived from SBC's complaint, together with facts that are judicially noticed. (*Crowley* v. *Katleman* (1994) 8 Cal.4th 666, 672 [34 Cal.Rptr.2d 386, 881 P.2d 1083] [For purposes of reviewing a judgment of dismissal following the sustaining of a demurrer, "we accept as true the properly pleaded material factual allegations of the complaint, together with facts that may properly be judicially noticed."].)

According to the complaint, in May 1997, the law firm of Desmond, Miller & Desmond (Desmond Miller) was counsel to the trustee in the bankruptcy proceeding of Sutter Brewing Company, Inc. In that capacity, on May 2, 1997, Desmond Miller caused to be filed in the United States Bankruptcy Court for the Eastern District of California a notice of motion to sell personal property of the debtor's estate and served the notice of motion

---

[1] All further undesignated statutory references are to the Civil Code.

on the creditors of the debtor. Although the proof of service accurately identified the debtor, the caption of the notice of motion erroneously designated SBC as the debtor, instead of Sutter Brewing Company, and miscited the bankruptcy court case number (by one digit) for the proceeding.[2] SBC had no connection to the bankruptcy case.

On May 6, 1997—two business days after the initial notice of motion was filed—Desmond Miller caused to be filed an amended notice of motion which corrected the error in the caption.[3]

In December 1997, SBC filed a complaint against Desmond Miller and two of its attorneys, seeking damages for defamation arising from the publication of the erroneous notice of motion.[4] Defendants demurred to the complaint, asserting the litigation privilege (§ 47, subd. (b)), and alternatively, the common interest privilege (§ 47, subd. (c)). The trial court sustained the demurrer without leave to amend.

## DISCUSSION

SBC contends the trial court erred in sustaining the demurrer because neither of the asserted privileges applies.

Since we assume the truth of all properly pleaded material allegations of the complaint with respect to an appeal from a judgment based on the sustaining of a demurrer (*Silberg* v. *Anderson* (1990) 50 Cal.3d 205, 210 [266 Cal.Rptr. 638, 786 P.2d 365]; *Rothman* v. *Jackson* (1996) 49 Cal.App.4th 1134, 1139 [57 Cal.Rptr.2d 284]), the interpretation of section 47, subdivision (b) is a question of law and subject to our independent review. (*Rothman* v. *Jackson, supra,* 49 Cal.App.4th at pp. 1139-1140.)

I

Section 47, subdivision (b) provides that with certain exceptions not relevant here, "[a] privileged publication or broadcast is one made: [¶] . . .

---

[2]The proof of service, while correctly identifying the debtor, also contained the wrong bankruptcy court case number.

[3]We take judicial notice of the filing of the amended notice, as authorized under sections 452 and 459 of the Evidence Code. Under section 452, subdivision (d), records of any court of the United States are subject to judicial notice, and in this case, defendants made a request for such judicial notice in the trial court. In an appeal from a ruling on a demurrer, we may take judicial notice of such a matter. (See Evid. Code, § 459, subd. (a); *Evans* v. *Pillsbury, Madison & Sutro* (1998) 65 Cal.App.4th 599, 605, fn. 5 [76 Cal.Rptr.2d 679].)

[4]Ironically, SBC committed an error similar to that for which it now seeks damages. SBC's complaint names Attorney William H. Nolan as a defendant. However, the true name of the defendant is William W. Nolan, and SBC so amended its complaint.

[¶] (b) [i]n any . . . (2) judicial proceeding . . . ." Thus, the language of the privilege, commonly known as the litigation privilege, is unequivocal: "Generally, a publication made in the course of a judicial proceeding is absolutely privileged." (*Obos* v. *Scripps Psychological Associates, Inc.* (1997) 59 Cal.App.4th 103, 106 [69 Cal.Rptr.2d 30].)

In *Silberg* v. *Anderson, supra,* 50 Cal.3d 205, the California Supreme Court stated that "[t]he usual formulation [for the litigation privilege] is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action. [Citations.]" (*Id.* at p. 212.) "The requirement that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action." (*Id.* at pp. 219-220.)

In this case, the parties do not dispute that the communication—the erroneously captioned notice of motion—satisfies the first two prongs of this formulation: It was made (1) in a judicial proceeding (2) by litigants or other participants authorized by law. After all, the complaint acknowledges that counsel to the trustee for Sutter Brewing Company—a litigant in the proceeding—"caused the name of [SBC] to be included in documents prepared in relation to the bankruptcy proceedings of Sutter Brewing Co., Inc." And those documents, whose proof of service accurately identified the debtor, were filed in the bankruptcy court. Hence, the notice of motion was made in a judicial proceeding by a litigant to that proceeding. SBC argues, however, that because SBC is a complete stranger to the bankruptcy proceeding, "the defective notice of motion has no connection to the bankruptcy case" and thus the "logical-relation" requirement necessary to establish the litigation privilege is not satisfied.

However, there is a line of cases, never expressly overruled, that do not require that a publication made in a judicial proceeding have a "logical relation" to the action. Thus, we must first address whether the "logical-relation" requirement must be satisfied in order for a publication made in a judicial proceeding to fall within the litigation privilege. After all, the statutory language of the privilege imposes no such requirement. In 1911, in *Gosewisch* v. *Doran* (1911) 161 Cal. 511, 513-515 [119 P. 656], the California Supreme Court noted that there were two lines of authority—one which made the privilege absolute and the other which placed a relevance limitation on the privilege—but declined to resolve the split in authority: "The prevailing rule in England and in some of the American states has been

that the privilege attaching to defamatory statements made in the course of judicial proceedings is absolute. . . . On the other hand, many courts in this country have limited the privilege to declarations pertinent and material to the matter in controversy. [Citations.] And this limitation of the rule applied in a case arising in this state prior to the amendment of 1874 to section 47 of the Civil Code. (*Wyatt* v. *Buell* [(1874)] 47 Cal. 624.) The language of subdivision 2 of the amended section is, however, broad and unrestricted in its terms, and this court, in *Hollis* v. *Meux* [(1886)] 69 Cal. 625, [58 Am. Rep. 574, 11 Pac. 248], suggested a doubt as to whether the Legislature, by enacting that subdivision, intended to change the rule announced in *Wyatt* v. *Buell*, so as to render communications made in a judicial proceeding absolutely privileged. The court . . . found it unnecessary to resolve this doubt. . . . Subject to the possible limitation of relevancy and materiality, the privilege attaching to statements made in the course of judicial proceedings is absolute." (*Gosewisch* v. *Doran, supra,* 161 Cal. at pp. 513-515.)

In *Moore* v. *United States Fid. & Guar. Co.* (1932) 122 Cal.App. 205 [9 P.2d 562], the Court of Appeal found that the decisions that placed a relevancy limitation on the privilege pronounced a "rule independent of statute," and citing *Gosewisch,* stated that "[o]ur conclusion is that the wording of the statute makes the privilege absolute." (*Id.* at p. 211.)

By 1956, our Supreme Court was approvingly citing *Gosewisch* v. *Doran, supra,* 161 Cal. 511, and *Moore* v. *United States Fid. & Guar. Co., supra,* 122 Cal.App. 205, for the proposition that "publications made in the course of a judicial proceeding are absolutely privileged." (*Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 379 [295 P.2d 405].) However, in *Albertson,* in deciding whether the recordation of a notice of lis pendens is a "publication in the course of a judicial proceeding," our Supreme Court added a "reasonable relation" requirement. (*Id.* at pp. 379, 381.) In determining whether a publication made *outside* of the court was made "in" a judicial proceeding, the court ruled: "If the publication has *a reasonable relation* to the action and is permitted by law, the absolute privilege attaches." (*Id.* at p. 381, italics added.) It explained that ". . . the privilege applies to any publication, such as the recordation of a notice of *lis pendens,* that is required [citation] or permitted [citation] by law in the course of a judicial proceeding *to achieve the objects of the litigation,* even though the publication is made outside the courtroom and no function of the court or its officers is invoked." (*Id.* at pp. 380-381, italics added.) The "reasonable relation" test is now referred to as a "logical-relation" test. (*Silberg* v. *Anderson, supra,* 50 Cal.3d at p. 212.)

Admittedly, a "logical-relation" test is necessary to determine whether a publication made *outside* the court is sufficiently connected with the judicial

proceeding to be deemed in it. It is less obvious that such a test should be applied to communications made *in* a judicial proceeding in light of the absolute wording of the statutory privilege. Indeed, an amendment to section 47 in 1927 added a proviso that the privilege does not apply to statements in certain domestic relations proceedings, unless the statement is, inter alia, "material and relevant to the issues"; the inclusion of such a limitation in such proceedings (a proviso that continues to exist today) might suggest that no such limitation is required in other cases. (See Stats. 1927, ch. 866, § 1, pp. 1881-1882.)

In *Lewis* v. *Linn* (1962) 209 Cal.App.2d 394 [26 Cal.Rptr. 6], in the context of a slander suit based on statements made by a judge on the bench, the Court of Appeal acknowledged that the application of the "logical-. relation" test to the privilege was not settled, although "[t]he holding of [*Moore* v. *United States Fid. & Guar. Co.*, *supra*, 122 Cal.App. 205 ] that relevancy is not a limitation on the privilege generally has been followed (*Donnell* v. *Linforth* [(1936)] 11 Cal.App.2d 25 [52 P.2d 937]), and both these cases have been cited by the Supreme Court without limitation, although in a different context (*Albertson* v. *Raboff* [, *supra*,] 46 Cal.2d 375, 379 [295 P.2d 405])." (*Id.* at pp. 398-399.) The court stated that even if the limitation applies, it should not be rigidly applied and that the privilege should be denied "only when the matter is 'so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its relevancy and impropriety.' [Citation.]" (*Id.* at p. 399.)

More recent formulations of the litigation privilege, as in *Silberg* v. *Anderson*, *supra*, 50 Cal.3d at page 212, while characterizing it as "absolute," have required that the communication "have some connection or logical relation to the action." Indeed, in *Silberg* v. *Anderson*, the Supreme Court favorably cited its earlier decision in *Carpenter* v. *Ashley* (1906) 148 Cal. 422 [83 P. 444]—which refused to apply the privilege to allegedly defamatory statements made during, but unrelated to, a trial—as a "good example of an application of the principle . . . ." (50 Cal.3d at p. 220.)

A "logical-relation" requirement for communications made *in* court, however, will not materially constrict the absolute nature of the privilege as long as it is not rigidly applied, as formulated in *Lewis* v. *Linn*, *supra*, 209 Cal.App.2d 394, since few publications in court will be " 'so palpably irrelevant to the subject matter of the controversy that no reasonable [person] can doubt its relevancy and impropriety.' " (*Id.* at p. 399.) Indeed, a requirement that statements made in a court not be "palpably irrelevant to the subject matter" (*ibid.*) merely serves to establish that the statements were made *in* the proceeding from a functional standpoint.

The Court of Appeal in *Thornton* v. *Rhoden* (1966) 245 Cal.App.2d 80 [53 Cal.Rptr. 706, 23 A.L.R.3d 1152], concluded that the conflicting authorities could be reconciled by holding that where the defamatory words have no connection with the action, " 'then such defamatory words are not *in fact* published *in a judicial proceeding* even though such defamatory words are published during the progress of a trial and in the very courtroom where the cause is on trial.' " (*Id.* at pp. 89-90, original italics, quoting *Irwin* v. *Newby* (1929) 102 Cal.App. 110, 116 [282 P. 810].) The court observed that such a rule conformed with the Restatement of Torts and should be couched in nontechnical terms: "A rule which requires the demonstration of some connection with the proceedings, yet dispenses with the requirement of relevancy, materiality or pertinency, in their technical sense appears to us not only to be a fair compromise between the competing considerations involved, but to be the one adopted by the Restatement of Torts and by at least two decisions in this state, *Jordan* v. *Lemaire* [(1963)] 222 Cal.App.2d 622, 624-625 [35 Cal.Rptr. 337] and *Lewis* v. *Linn*[, *supra*,] 209 Cal.App.2d 394 [26 Cal.Rptr. 6]. The test, as formulated by the Restatement appears to be purposely couched in nontechnical legal language: does the utterance have 'some relation' to the judicial proceeding?" (245 Cal.App.2d at p. 90, fn. omitted.)

Accordingly, because the "logical-relation" requirement confirms that the defamatory statement must be published "in" the judicial proceeding in a functional sense, and because the Supreme Court in *Silberg* v. *Anderson*, *supra*, 50 Cal.3d 205, included the "logical-relation" requirement in its formulation of the privilege and cited with approval *Carpenter* v. *Ashley*, *supra*, 148 Cal. 422 (which relied on that requirement in the context of allegedly defamatory statements made during trial), we apply the requirement to a publication filed in a judicial proceeding here. But we find that the requirement must not be rigidly applied: The privilege should be denied only where it is so palpably irrelevant to the subject matter of the action that no reasonable person can doubt its irrelevancy. (*Lewis* v. *Linn, supra*, 209 Cal.App.2d at p. 399.) Of course, the "logical-relation" test still includes the requirement that "the communication be in furtherance of the objects of the litigation," as stated in S*ilberg* v. *Anderson, supra*, 50 Cal.3d at page 219.

## II

As previously noted, SBC argues that because it is a complete stranger to the bankruptcy proceeding, "the defective notice of motion has no connection to the bankruptcy case" and thus that the "logical-relation" requirement necessary to establish the litigation privilege does not apply.

However, it is the subject matter or context of the misstatement, not the isolated misstatement itself, which must control whether a communication

has "some connection or logical relation to the action." (*Silberg* v. *Anderson, supra,* 50 Cal.3d at p. 212.) Otherwise, testimony by a witness could be shorn of its privilege where the witness misnames an unrelated person or business, resulting in defamation. In short, if the misstatement alone had to be logically related to the action, many misstatements—which are, by definition, false—would not be so related. In contrast, when it is the subject matter or context of the misstatement made in the judicial proceeding that must be logically related to the action, the existence of a logical relation between the two can be determined without considering the falsity of the communication. And it would be a poor privilege indeed that required the truth of the allegedly defamatory communication to be determined in order to determine the privilege's application. By looking at the subject matter or context of the communication, the falsity of the communication need not be considered to invoke the privilege.

In this case, the subject matter or context of the communication was not the narrow misidentification of the debtor but the notice of motion filed and served by the bankruptcy trustee's counsel in connection with an ongoing bankruptcy proceeding. As evidenced by the correct name of the debtor on the proof of service, and the subsequent amended notice that corrected the error (responsibly filed by the trustee's counsel within two business days), the notice of motion was logically related to the action, as it was the instrument by which interested parties would receive notice of the sale of the personal property of the estate. The communication furthered the objects of the litigation. The fact that the caption of an otherwise relevant document misnamed the debtor (and miscited the case number) did not make the notice of motion unconnected to, or palpably irrelevant to, the bankruptcy proceeding and transform it into an unprivileged filing.

Our conclusion in this case is bolstered by the fact that the misidentification of a person was held not to result in the loss of the protection of a related privilege under section 47, subdivision (b). In *Devis* v. *Bank of America* (1998) 65 Cal.App.4th 1002 [77 Cal.Rptr.2d 238], a bank's misidentification to the police of the person alleged to have stolen checks (the bank misidentified the person as David Devis, instead of David Davis) was afforded the privilege under subdivision (b)(3) of section 47 (communications made in an official proceeding), even though the misidentified person was unrelated to the theft.[5]

The circumstances in this case are distinguishable from those in *Carpenter* v. *Ashley, supra,* 148 Cal. 422, where during a larceny trial, a district

---

[5]The court in *Devis,* however, stated that the erroneous report to the police had to be in good faith—a position with which other cases disagree. (E.g., *Williams* v. *Taylor* (1982) 129 Cal.App.3d 745, 753-754 [181 Cal.Rptr. 423].) In contrast, the litigation privilege has no such

attorney accused a defense attorney of perjury and subornation of perjury with respect to matters wholly unrelated to the trial: "And it is quite clear that in the case at bar the defamatory words alleged to have been spoken by the defendant [district attorney] of plaintiff, who was simply an opposing attorney in the case at hand, had no pertinency, relevancy, or reference to the charge of larceny in the pending action of People v. Ennis, which was the subject-matter of inquiry in that action; he had no more privilege to use the defamatory words alleged than he would have had to charge plaintiff with robbery, rape or murder." (*Id.* at pp. 425-426.) Thus, in *Carpenter* v. *Ashley, supra,* 148 Cal.422, the subject matter of the publication was unrelated to the judicial proceeding.

Likewise, in *Nguyen* v. *Proton Technology Corp.* (1999) 69 Cal.App.4th 140 [81 Cal.Rptr.2d 392]—which dealt with a publication made outside the court—the Court of Appeal held that the inclusion of erroneous references to a third party's criminal record in a prelitigation demand letter fell outside the litigation privilege because any connection between the criminal record and the dispute alleged in the demand letter was tenuous.

In each case, the communicative act—the claim of perjury unrelated to the trial, or the claim of a criminal record unrelated to the dispute cited in the demand letter—was deemed by the court not to be logically related to the action or the dispute. And it was not simply the falsity of the statement that was not relevant, but the subject matter of the false statement that bore no relationship to the action. In this case, the subject matter of the erroneous communication—the notice of motion to sell personal property, served on Sutter Brewing Company's creditors—was logically related to the bankruptcy proceeding of Sutter Brewing Company, even though the misnamed debtor in the motion's caption was not. It is thus covered by the litigation privilege.

## III

SBC asserts that the purposes of the litigation privilege are not furthered by its application here. We disagree. Applying the privilege to a clerical error in the caption of a notice of motion filed in a judicial proceeding is consistent with the purposes of the litigation privilege, which are to promote access to the courts without the fear of subsequent harassment by derivative tort actions and to avoid "an unending roundelay of litigation" derived from prior litigation. (E.g., *Silberg* v. *Anderson, supra,* 50 Cal.3d at pp. 213-214.) Indeed, the rule sought by SBC would create the irony wherein a *maliciously*

requirement, and in any event, the issue of good faith is not, nor could it be, an issue in this case in light of the record.

generated defamatory statement *about* a party, witness, or counsel would be privileged, but the *innocent* misnomer *of* a party would not. An absolute privilege does not further its purposes if it is dependent in each case upon a judicial determination that its purposes would be furthered. Put another way, an absolute privilege whose absolute nature can be subject to question in each case may soon find that so, too, are its benefits.

As we have concluded that the litigation privilege applies to bar the defamation action, we need not address the question of whether the qualified privilege under section 47, subdivision (c) also applies.

### DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

Scotland, P. J., and Blease, J., concurred.