101 Cal.Rptr.2d 426 (2000)
84 Cal.App.4th 1103
Salwan NAFSU, Plaintiff and Appellant,
v.
Steven Michael HURD, Defendant and Respondent.
No. D035536.
Court of Appeal, Fourth District, Division One.
November 16, 2000.
Review Granted February 14, 2001.
*428 Earl T. Durham, San Diego, for Plaintiff and Appellant.
Jon E. Taylor, for Defendant and Respondent.
*427 McINTYRE, J.
In this case, we decide that the litigation privilege set forth in Civil Code section 47, subdivision (b) (all statutory references are to the Civil Code unless otherwise specified) does not bar rescission of a settlement when the settlement was based on a misrepresentation of the applicable insurance policy limits.

FACTUAL AND PROCEDURAL BACKGROUND
The facts underlying the parties' dispute are relatively simple, although the procedural history of this case is somewhat convoluted. In accordance with the rules applicable to appellate review of a ruling on demurrer, the factual recitation is based on the allegations of Nafsu's second amended complaint. (E.g., Aubry v. Tri-City Hospital Dist. (1992) 2 Cal.4th 962, 966-967, 9 Cal.Rptr.2d 92, 831 P.2d 317.)
Steven Michael Hurd shot Salwan Nafsu in the leg during an altercation at a Red Lion Hotel in San Diego. In July 1994, Nafsu filed this action, asserting claims for assault and battery and intentional infliction of emotional distress against Hurd and negligence against Red Lion (doing business as Red Lion Hotel/San Diego) and its security company, the Richman Management Corporation (doing business as Heritage Security Service (hereafter Heritage)). After Nafsu filed his complaint, Allstate Insurance Company (Allstate) undertook Hurd's defense and retained an attorney to represent Hurd.
In mid-1995, after the superior court granted motions for summary judgment brought by Red Lion and Heritage, the Allstate attorney offered Nafsu $50,000 to settle the claims against Hurd, who was apparently then in bankruptcy. Nafsu accepted the offer and the parties entered into a written settlement agreement. Nafsu filed a dismissal with prejudice as to his claims against Hurd.
Nafsu successfully appealed the judgment entered in favor of Red Lion. Upon remand, Red Lion filed a cross-complaint against Hurd and propounded discovery requests to him. In response to interrogatories, Hurd indicated that the limits of his homeowner's policy were $300,000.
Hurd made a motion for a judicial determination that his settlement with Nafsu was in good faith. (See Code Civ.Proc., § 877.6.) The superior court denied Hurd's motion for failure to sufficiently show a rough approximation of Nafsu's total recovery and Hurd's proportionate liability therefor. Thereafter, pursuant to an indemnity clause set forth in the written settlement agreement, Hurd demanded that Nafsu indemnify him for any costs, *429 fees or other amounts incurred in connection with Red Lion's cross-complaint against him.
Nafsu made a motion to set aside the dismissal of his claims against Hurd and either to rescind the settlement agreement or to amend his complaint to state a claim for rescission against Hurd. In support of his motion, Nafsu argued that the Allstate attorney had misrepresented that Hurd's policy limits were $100,000 and that he had relied on the misrepresentation in deciding to accept Hurd's settlement offer. The superior court granted the motion to vacate the dismissal based on extrinsic fraud or mistake and gave Nafsu leave to file an amended complaint to allege a claim for rescission of the settlement agreement.
Hurd moved for reconsideration, attaching a declaration by the Allstate attorney that there was no discussion of or representation regarding Hurd's policy limits during the settlement negotiations. Nafsu opposed the motion. The superior court granted the motion to reconsider. It held that, although there was a conflict in the evidence as to the existence of extrinsic fraud, the evidence was sufficient to support the existence of extrinsic mistake. On this basis, the court again set aside the dismissal and granted Nafsu leave to amend.
Nafsu filed a first amended complaint asserting claims for assault and battery, intentional infliction of emotional distress, rescission and reformation against Hurd. After Hurd filed a demurrer to the rescission and reformation causes of action based in part on the argument that section 47, subdivision (b) (hereafter, section 47(b)) barred those claims, Nafsu filed a second amended complaint. Hurd again demurred on the basis of the litigation privilege and the trial court sustained the demurrer without leave to amend. Thereafter, the court granted Hurd's motion for summary judgment as to the remaining claims and entered judgment in Hurd's favor. Nafsu appeals.

DISCUSSION

1. Standard of Review

On this appeal, the paramount issue is whether the superior court properly sustained Hurd's demurrer to Nafsu's rescission claim based on the bar of section 47(b). In resolving this issue, we must determine whether, as a matter of law, section 47(b) bars Nafsu's claim as alleged in his second amended complaint. The application of section 47(b) to the facts properly alleged in support of Nafsu's claim involves a question of law, which is subject to our independent determination. (Sacramento Brewing Co. v. Desmond, Miller & Desmond (1999) 75 Cal.App.4th 1082, 1085, 89 Cal.Rptr.2d 760.)

2. Does the Litigation Privilege Bar Nafsu's Cause of Action for Rescission?

A. The Privilege
Section 47(b) provides in relevant part: "A privileged publication or broadcast is one made: ... (b) In any ... (2) judicial proceeding...." The privilege created by the statute generally applies to any communication "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) [having] some connection or logical relation to the action. [Citations.]" (Silberg v. Anderson (1990) 50 Cal.3d 205, 212, 266 Cal.Rptr. 638, 786 P.2d 365.) The privilege protects any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even if the publication is made outside the courtroom and no function of the court or its officers is involved (Silberg v. Anderson, supra, 50 Cal.3d at pp. 211-212, 266 Cal.Rptr. 638, 786 P.2d 365) and even if the communicator makes that statement with malice. (Harris v. King (1998) 60 Cal.App.4th 1185, 1187-1188, 70 Cal.Rptr.2d 790.) The privilege bars all tort claims arising out of a protected statement, except claims for malicious *430 prosecution. (Silberg v. Anderson, supra, 50 Cal.3d at pp. 215-216, 266 Cal.Rptr. 638, 786 P.2d 365.)
Section 47(b) creates immunity from liability arising out of communications that occur during the course of a judicial or quasi-judicial proceeding, subject to certain statutory and judicially recognized exceptions. (Heller v. Norcal Mutual Ins. Co. (1994) 8 Cal.4th 30, 36, 32 Cal.Rptr.2d 200, 876 P.2d 999; see also Carney v. Rotkin, Schmerin & McIntyre (1988) 206 Cal.App.3d 1513, 1520, 254 Cal. Rptr. 478 [the litigation privilege, unlike evidentiary privileges, does not result in the exclusion of evidence but, when successfully asserted as a defense in a civil action, precludes liability arising from covered communications].)
The fundamental purpose of section 47(b) is to afford litigants and witnesses "the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (Silberg v. Anderson, supra, 50 Cal.3d at p. 213, 266 Cal.Rptr. 638, 786 P.2d 365.) It promotes the "effectiveness of judicial proceedings by encouraging `open channels of communication and the presentation of evidence' in judicial proceedings." (Ibid., quoting McClatchy Newspapers, Inc. v. Superior Court (1987) 189 Cal.App.3d 961, 970, 234 Cal.Rptr. 702.) The litigation privilege is designed to eliminate the external threat of liability, which would otherwise discourage open communication in a judicial setting and thus threaten the effective administration of justice. (Silberg v. Anderson, supra, 50 Cal.3d at p. 213, 266 Cal.Rptr. 638, 786 P.2d 365.) It reflects a legislative determination that "witnesses should be free from the fear of protracted and costly lawsuits which otherwise might cause them either to distort their testimony or refuse to testify altogether." (Id. at p. 214, 266 Cal.Rptr. 638, 786 P.2d 365.)
Another important purpose served by the litigation privilege is to ensure the integrity and finality of the ultimate resolution of a controversy that has been reached through the litigation process. As explained in Silberg:
"[I]n immunizing participants from liability for torts arising from communications made during judicial proceedings, the law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result. [Citations.]...." (Silberg v. Anderson, supra, 50 Cal.3d at p. 214, 266 Cal.Rptr. 638, 786 P.2d 365.)

B. Do Nafsu's Allegations Establish Protected Communications?
Nafsu's rescission cause of action is based on alleged misrepresentations by the defense attorney retained by Allstate regarding the policy limits of Hurd's insurance policy. That these allegations meet the criteria for application of the protective provisions of section 47(b) is not contested. The alleged misrepresentations are clearly communicative in nature and therefore within the privilege of section 47(b), regardless of whether the defense attorney engaged in related non-communicative acts. (See Rubin v. Green (1993) 4 Cal.4th 1187, 1195-1196, 17 Cal.Rptr.2d 828, 847 P.2d 1044.) The defense attorney was clearly an authorized participant in the action and is alleged to have made the statements in the discussions preceding the settlement of the action. As such, the statements were aimed to achieve the purpose of the litigation and had a logical relation to the proceedings. (Joseph A. Saunders, P.C. v. Weissburg & Aronson (1999) 74 Cal.App.4th 869, 874-875, 87 Cal. Rptr.2d 405; Asia Investment Co. v. Borowski (1982) 133 Cal.App.3d 832, 842-843, 184 Cal.Rptr. 317.) The alleged misrepresentations are thus protected under the litigation privilege.

C. Application of Section 47(b) to Nafsu's Claim for Rescission
Nafsu contends that, although the alleged misrepresentations are otherwise *431 within the litigation privilege, section 47(b) does not bar his claim for rescission. In addressing his contention, we emphasize that we assume the truth of Nafsu's allegations that Hurd's attorney misrepresented the applicable policy limits in the discussions that preceded the settlement and that Nafsu accepted the settlement based on this misrepresentation. We make no determination of the merits of the allegations and recognize that a trier of fact may find that Nafsu did not rely on the representations as to the policy limits in entering the settlement, but later sought to set aside the settlement based on the other recited events that transpired after the settlement occurred. However, the facts as alleged present an important issue that is as yet unresolved under California law, one that we believe is of fundamental importance to the functioning of the courts and of tort litigation in this state.
We accept the proposition that, in accordance with established case law, the litigation privilege normally would bar a claim for rescission of a settlement agreement that is induced by fraudulent statements. (See Edwards v. Centex Real Estate Corp. (1997) 53 Cal.App.4th 15, 40, 61 Cal.Rptr.2d 518 [the litigation privilege bars a claim for rescission based on allegations that the contract was induced by fraud].) However, where, as in this case, the settlement agreement results from a misrepresentation regarding the limits of insurance policies providing coverage or potential coverage for a claim, we conclude that the policy considerations in favor of allowing a rescission claim are so strong as to outweigh the considerations underlying the litigation privilege and that an exception to the litigation privilege thus exists under these circumstances.
It is well established that the litigation privilege does not bar an action or claim to set aside a judgment or dismissal that resulted from extrinsic fraud or mistake. In such circumstances, the application for relief is directed to the court's exercise of its equitable powers. (Silberg v. Anderson, supra, 50 Cal.3d at p. 214, 266 Cal.Rptr. 638, 786 P.2d 365, citing Kachig v. Boothe (1971) 22 Cal. App.3d 626, 632, 99 Cal.Rptr. 393; see generally 8 Witkin, Cal. Procedure (4th ed. 1997) Attack on Judgment in Trial Court, §§ 214, 219, pp. 718-719, 722-723.) Generally, the introduction of perjured testimony or false documents in, or the concealment or suppression of material evidence from, litigation is deemed to be intrinsic to the proceedings and does not provide a basis for the court's granting of equitable relief. (See Parsons v. Tickner (1995) 31 Cal.App.4th 1513, 1532, 37 Cal. Rptr.2d 810; Kachig v. Boothe, supra, 22 Cal.App.3d at p. 634, 99 Cal.Rptr. 393; 8 Witkin, Cal. Procedure (4th ed. 1997) Attack on Judgment in Trial Court, §§ 223-243, pp. 727-759.) However, we conclude that, where an insurer, its insured or defense counsel retained by the insurer misrepresents the available insurance policy limits and, on that basis, obtains a settlement from the plaintiff, the fundamental nature of the misrepresentation supports the need for relief and thus establishes a basis for the court's exercise of its powers in equity.
The truthful and accurate disclosure of the availability and extent of insurance coverage prior to the filing or during the pendency of an action is fundamental and critical in modern day tort litigation. Such disclosure is central to the duration, course and scope of litigation, affecting whether a case is filed, settled or tried and thus whether the parties' time and resources, as well as judicial resources, will be required to resolve the parties' disputes. In fact, thousands of cases are settled in this state every year on the basis of disclosed policy limits. Where an insurer, its insured or defense counsel fails to make full and accurate disclosure of relevant insurance information, the essential fairness of our civil tort system is undermined. If litigants and courts cannot rely on insurers, insureds and their counsel to accurately disclose information about applicable insurance *432 coverage, litigation will become more expensive and onerous to the parties and to the legal system as a whole. Because of the fundamental importance of insurance to the functioning of our legal system, we believe that the existence of equitable relief is essential to create an incentive for the defense to make appropriate disclosures.
Based on similar policy considerations, the Legislature has recently created an exception to the litigation privilege for communications that conceal the existence of applicable insurance policies. (§ 47, subd. (b)(3).) In light of this express statutory exception, it is arguable that the creation of an exception to the litigation privilege for communications that misrepresent insurance policy limits is a matter for the Legislature rather than the courts. However, we conclude that the truthfulness and accuracy of such communications is so basic and fundamental to tort litigation and the functioning of the court system that, in the absence of a contrary legislative declaration, it is appropriate for us to recognize such an exception.
We conclude that the court's equitable power to set aside a judgment or dismissal is triggered when the judgment or dismissal resulted from a misrepresentation about the policy limits of available insurance. Further, under such circumstances, the litigation privilege does not bar a claim for rescission of the settlement on which the judgment or dismissal was based. (See also § 47, subd. (b)(3).)
Because we conclude that the litigation privilege does not bar Nafsu's rescission cause of action, we reverse the superior court's ruling sustaining Hurd's demurrer to that cause of action and the subsequent granting of summary judgment to the remaining causes of action based on a finding that the settlement agreement barred such claims.

DISPOSITION
The judgment is reversed and the matter is remanded for further proceedings in accordance with this decision. Nafsu is to recover his costs of appeal.
WORK, Acting P.J., and O'ROURKE, J., concur.