Filed 6/30/15  Certified for Partial Pub. 7/28/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ADAM M. KLOTZ et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>MILBANK, TWEED, HADLEY &<br>MCCLOY et al.,<br><br>    Defendants and Appellants. | B255827<br><br>(Los Angeles County<br>Super. Ct. No. BC517937) |

APPEAL from an order of the Superior Court of Los Angeles County, Joseph R. Kalin, Judge.  (Retired Judge of the L.A. Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed in part and reversed in part.

Caldwell Leslie & Proctor, Christopher G. Caldwell, Joan Mack and Julia J. Bredrup for Defendants and Appellants.

Fox Rothschild and Michael Eidel for Plaintiffs and Respondents.

_____

Defendants Milbank, Tweed, Hadley & McCloy (Milbank) and Deborah Festa (Festa) appeal the trial court's order overruling their demurrer and denying their motion to strike the First Amended Complaint under Civil Code section 1714.10.[1]  Plaintiffs SageMill LLC (SageMill), Adam Klotz (Klotz) and Richard Spitz (Spitz) alleged that a former business associate of theirs, Stephen Bruce (Bruce), who was a client of defendants, conspired with defendants to unlawfully withdraw from SageMill and to usurp a nascent business opportunity of SageMill.  Plaintiffs alleged claims for breach of fiduciary duty, conspiracy, and legal malpractice, and defendants moved to strike the entire complaint as to the individual plaintiffs Klotz and Spitz because defendants had no independent legal duty to plaintiffs nor did they act for their personal financial gain.  The trial court denied the motion.  We reverse the trial court's order on plaintiffs' second cause of action for conspiracy as to the individual plaintiffs Klotz and Spitz, finding that any advice defendants gave Bruce arose from an attempt to contest or compromise a claim or dispute, and thus was within the ambit of section 1714.10, and affirm the trial court's order on plaintiffs' other claims for breach of fiduciary duty and legal malpractice.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### 1.  *Plaintiffs' Initial Complaint*

Plaintiffs' complaint filed August 12, 2013 alleged claims for breach of fiduciary duty, conspiracy in breach of fiduciary duty, and legal malpractice against Festa and Milbank.  Plaintiffs sought compensatory and punitive damages.  The complaint alleged that:

In or around December 2009, Klotz, Spitz, and Stephen Bruce (Bruce) commenced working together in a partnership they named "SageMill."  The work of the partnership led to the formation of a limited liability company known as SageMill Capital Advisors LLC (SageMill), whose certificate of formation was filed with the Delaware Secretary of State on August 15, 2011.  Klotz, Spitz, and Bruce were partners in the partnership until

_____

[1] All further statutory references are to the Civil Code unless otherwise indicated.

2

formation of SageMill, and are and have since formation been the sole managers of SageMill.[2]

In founding SageMill, Klotz, Spitz and Bruce sought to capitalize on their trading portfolio management, structured finance, and capital markets experience, and utilize their skills to benefit SageMill's clients. SageMill's primary focus was to craft tailored, short-term investment strategies, not available from leading banks or asset managers, for select investors holding large positions in cash and near-cash securities, and to achieve returns surpassing those of U.S. Treasuries without taking risk exceeding that of AAA-type corporate debt. SageMill also envisioned it would function as an investment advisor by drawing upon the collective expertise of Klotz, Spitz and Bruce and employing rigorous methodologies for identifying, selecting, and monitoring opportunities suitable for delivering carefully and conservatively targeted returns, as well as for crafting optimized blends of these opportunities based upon characteristics such as volatility and correlation.

SageMill is governed by an operating agreement that was signed on July 19, 2012, and, by its terms, was effective retroactively to January 1, 2012. Among other provisions, the operating agreement provides that a member may not withdraw without the consent of SageMill's managers, and prohibits Klotz, Spitz and Bruce from engaging in the business of rendering services to anyone that owns or operates a competitive business as defined in the operating agreement.

Sometime in or about late 2010, when Festa was with the law firm of O'Melveny & Meyers, she commenced representation of SageMill. While at the O'Melveny Firm, Festa represented Bruce individually prior to undertaking the representation of SageMill. Beginning in or about late 2010, Festa and her O'Melveny partners also consulted with Klotz, Spitz, and Bruce on multiple occasions, both via email and in individual and group

---

[2] The sole members of SageMill Capital Advisors LLC were Klotz and Spitz, individually, and Bruce in his capacity as trustee of the Bruce and Mona Bruce Living Trust.

3

phone calls, regarding SageMill's business. These communications contained statements by Festa indicating that Sage Mill Capital Advisors was her client, and reflected that they contained privileged attorney-client communications.

With respect to the nature of the representation, Festa sent a February 28, 2011 email to Bruce and Klotz in which Festa specifically referred to "our client/counsel arrangement" and stated: "'As we continue to make progress on the structuring front, we should think about formalizing our client/counsel arrangement. Has SageMill been formed yet? If so, please send me copies of the formation documents (certificate of incorporation; bylaws) and general/organizational resolutions. If not, we might consider starting the formation process, and in the interim moving forward under our [O'Melveny & Myers's] existing engagement letter with [Bruce].'"

In response to this email, Klotz and Festa discussed that the SageMill partners would not require O'Melveny's assistance with the formation or operating agreement of SageMill. Klotz and Festa also discussed that O'Melveny would continue to provide advice to SageMill, and defer billing until SageMill commenced generating revenue, as opposed to legal fees being funded from capital contributions. Following this conversation, Festa never sent a formal written engagement agreement, and instead continued to represent the SageMill Partnership (and later SageMill Capital Advisors LLC) without one. Festa also never sent any conflict letter regarding her representation of multiple parties, namely, the three partners.

On January 17, 2012, Festa sent Klotz and Spitz, and presumably Bruce, an email announcing that she was leaving the O'Melveny and joining the Milbank Firm as a partner. Festa continued her representation of SageMill at the Milbank Firm.

In mid-2012, SageMill began to develop a new business opportunity, a venture with Invest AD, an entity owned by the Abu Dhabi government. SageMill believed the venture would generate $110 million of EBITDA[3] by its third year. Sometime in July

---

[3] Earnings Before Interest, Taxes, Depreciation and Amortization.

4

2012, Bruce sent the SageMill operating agreement to Festa for the purpose of seeking legal advice about it. However, Bruce's consultation with Festa was not on behalf of SageMill, but rather on behalf of himself personally, and Festa provided legal advice to Bruce that was adverse to SageMill, Klotz, and Spitz. Festa did not disclose to Klotz or Spitz that she had been consulted by Bruce individually to procure legal advice adverse to Klotz, Spitz, and SageMill, nor did she obtain their informed written consent to do so.

The SageMill/Invest AD venture was never entered into because negotiations fell apart at the end of July 2012. On August 3, 2012, Bruce emailed Klotz and Spitz, indicating that he had consulted Festa at their suggestion, and presented them with a "'Termination Agreement'" prepared by Festa that, if signed, would have dissolved SageMill and released Bruce from all claims and obligations under the operating agreement.

The SageMill-lnvest AD joint venture transaction allegedly was not consummated principally because Bruce breached his fiduciary duties to Klotz and Spitz, and to SageMill, by putting his own interests ahead of SageMill's interests and secretly working to usurp for himself SageMill's corporate opportunity with lnvest AD. Plaintiffs alleged that Festa aided and abetted Bruce in breaching his fiduciary duties by, among other things, giving him legal advice that he could avoid enforcement of the SageMill operating agreement, which, indeed, Bruce had just signed in mid-July 2012.

Festa prepared an agreement terminating Bruce's involvement with SageMill and Festa provided advice to Bruce, without notice to SageMill, Klotz or Spitz, or a conflict waiver, thus breaching her fiduciary duties to SageMill, Klotz and Spitz. Klotz called Festa on the afternoon of August 3, 2012, and informed her that the Milbank Firm had a conflict of interest in representing Bruce adverse to Klotz and Spitz, as well as to SageMill.

The Milbank firm, and Festa, were aware of their ethical obligation to avoid such a conflict of interests under California Rules of Professional Conduct rule 3-310. However, and in spite of all of the above-described facts and the California Rules of Professional

5

Conduct, Festa insisted that she was never counsel to SageMill and told Klotz: "even if I was, that was at least a year ago, so you are just a former client."

On August 1, 2013, Festa commenced communications with Bruce about a new retention agreement for himself individually as the client. On August 9, 2012, Festa sent Klotz and Spitz an email denying that O'Melveny or Milbank had ever represented SageMill, and seeking waivers from Klotz and Spitz individually and on behalf of SageMill of any claims they may have against the Milbank firm's representation of Bruce in any negotiations or adversary proceedings or litigation adverse to either or both of them or SageMill in connection with Bruce's rights and obligations with respect to SageMill.

On August 13, 2012, Festa responded to Klotz's August 9 email, stating that Milbank would withdraw "as counsel to Bruce in connection with the matter of his withdrawal from the SageMill partnership."

Despite this agreement to withdraw, Festa and Milbank continued to represent Bruce adverse to SageMill, Klotz and Spitz. Milbank continued to represent Bruce personally with respect to continuing negotiations he was having with Invest AD to establish a new joint venture, one that would exclude Klotz and Spitz, in clear violation of the terms of SageMill's operating agreement. Bruce's new proposed joint venture constituted both a corporate opportunity of SageMill and a "Competitive Business" of SageMill under the SageMill operating agreement.

### 2. *Procedural History*

#### (a) First Motion to Strike

On October 3, 2013, defendants filed a motion to strike the complaint pursuant to section 1714.10 as to the allegations made by Klotz and Spitz only. Defendants asserted that plaintiffs were required to obtain court approval before alleging a conspiracy claim against an attorney; all of plaintiffs' claims, no matter how they were labeled as causes of action, were essentially conspiracy claims and fell squarely within section 1714.10;[4] and

---

[4] Section 1714.10, subdivision (a) provides in pertinent part: "No cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to

none of plaintiffs' claims fell within either of the narrow exceptions to section 1714.10 because defendants did not have an independent legal duty to plaintiffs, nor did defendants act for personal gain. Defendants concurrently demurred to the complaint.

In opposition, plaintiffs argued that defendants owed them an independent legal duty based on their representation of the partnership because an attorney represents all of the partners to the partnership, and that defendants acted unlawfully for their own financial gain because defendants abandoned their representation of SageMill in favor of a more lucrative client, Bruce. In the alternative, plaintiffs requested leave to amend to plead that the exemptions of section 1714.10, subdivision (c) applied.

After taking the matter under submission at the November 21, 2013 hearing, the court granted the motion to strike in part on the second cause of action for conspiracy as to individual plaintiffs Klotz and Spitz. The court reasoned that plaintiffs had failed to allege that defendants impliedly agreed not to accept representations adverse to Klotz or Spitz as individuals sufficient to establish an independent legal duty, and there was no showing that defendants gained a separate financial advantage sufficient to give Festa a "'stake in the wrongdoing.'" The court observed that in reaching this conclusion, it had necessarily determined that the individual plaintiffs Klotz and Spitz had not alleged an attorney-client relationship between Milbank and them, and granted them leave to amend the complaint to allege such a relationship. The court overruled defendants' demurrer.

_____

contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client, shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes the claim for civil conspiracy to be filed after the court determines that the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action. . . ." Subdivision (c) of section 1714.10 provides: "This section shall not apply to a cause of action against an attorney for a civil conspiracy with his or her client, where (1) the attorney has an independent legal duty to the plaintiff, or (2) the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain."

7

(b)     Plaintiffs' First Amended Complaint

On December 2, 2013, defendants filed a first amended complaint containing new allegations concerning the attorney-client relationship between Klotz and Spitz one hand and defendants on the other.  Plaintiffs alleged that since commencing the representation of SageMill in or about late 2010, Festa regularly communicated directly with Klotz and Spitz until approximately mid-January 2012 when Festa left the O'Melveny Firm.  During this period, Festa regularly provided advice on the marketing materials to the three SageMill partners (and later members), provided legal advice concerning broker-dealer licensing arrangements, tax structuring, and other matters.  Festa thus rendered legal advice which was intended to and did inure to the benefit of Klotz, Spitz, and Bruce individually.  Festa represented in emails that she was the attorney for SageMill, and communicated directly with Bruce, Klotz and Spitz regarding legal advice, billings for legal advice, the nature of their relationship, and regulatory issues affecting SageMill; such communications included privileged attorney-client communications.

Festa, however, never sent a formal written engagement agreement and represented SageMill without one, nor did she send a conflict letter.  From the beginning of their dealings with Festa, Klotz and Spitz believed that neither Festa nor her firm would take a position that was adverse to them individually or to SageMill.

Plaintiffs alleged defendants owed them an independent duty (a) to refrain from using confidential information and communications against them; (b) to refrain from undertaking any representation that would be adverse to them individually, especially any adverse representation wherein the party or parties adverse to Klotz and Spitz benefits by the use of confidential information that defendants obtained in the course of the attorney-client relationship; (c) to refrain from taking actions that undermined the ability of Klotz and Spitz to benefit individually from their participation in defendants' client, SageMill; and (d) to refrain from taking action to favor and benefit one member (Bruce) over Klotz and Spitz individually because defendants should have reasonably anticipated and did in

8

fact anticipate that such favoritism would damage or destroy defendants' client, SageMill, and thus damage or destroy Klotz's and Spitz's respective interests in SageMill."

Plaintiffs asserted claims for breach of fiduciary duty and conspiracy, and SageMill asserted a claim for legal malpractice.

(c)      Defendants' Demurrer/Motion to Strike

On January 6, 2014, defendants demurred to the First Amended Complaint on the ground that it was barred by section 1714.10. Defendants argued that the complaint failed to allege that defendants represented Klotz and Spitz as individuals, or that defendants owed an independent duty to them as nonclients; further, the individual plaintiffs' subjective understanding of an attorney-client relationship did not trigger the independent duty exception.

In opposition, plaintiffs asserted that section 1714.10 did not apply because the action did not arise from the attorney's attempt to contest or compromise a claim or dispute; the independent duty exception was not limited to a duty created by the attorney-client relationship; and Klotz and Spitz were intended beneficiaries of defendants' representation of SageMill.

After taking the matter under submission, on March 25, 2014, the court overruled defendants' demurrer, finding plaintiffs had alleged an implied agreement between defendants and the individual plaintiffs not to engage in any representation adverse to them. Specifically, the court stated: "Plaintiffs have adequately amended to allege that there was an implied agreement between Klotz and Spitz as individuals and Festa, that Festa would not engage in any representation adverse to Klotz or Spitz as individuals, and therefore that Festa owed independent legal duties to Klotz and Spitz as individuals within the meaning of Civil Code Section 1714(c). . . . This relieves plaintiffs from the petition procedure outlined in Section 17149. [¶] The demurrer that both of the causes of action alleged by Klotz and Spitz fail because they are solely based on the derivative loss of the IAD deal, which belonged to Sagemill, and not to Klotz or Spitz as individuals is also overruled. Klotz and Spitz allege damages in the form of lost wages and other

9

personal income that they, as individuals, allegedly lost due to the alleged usurpation of Sagemill's corporate opportunity in the form of the IAD deal. See, First Amended Complaint, paragraphs 84, 93. This is adequate to allege personal damages unlike the loss of corporate assets which [caused] damage [to] plaintiffs only incidentally by reduction in the value of the stock held."

## DISCUSSION

### I.    Scope of Appeal and Standard of Review

The parties do not dispute the fact that the trial court's order overruling Bruce's special demurrer based on 1714.10 is directly appealable. Subdivision (d) of section 1714.10 permits a direct appeal from "[a]ny order made under subdivision (a), (b), or (c) [of section 1714.10] which determines the rights of a petitioner or an attorney against whom a pleading has been or is proposed to be filed." Thus, defendants may appeal the trial court's order on their demurrer finding that plaintiffs need not comply with section 1714.10. (See *Evans v. Pillsbury, Madison & Sutro* (1998) 65 Cal.App.4th 599, 602–604 (*Evans*).) Our review is de novo. (*Pavicich v. Santucci* (2000) 85 Cal.App.4th 382, 389 (*Pavicich*).)

However, failure to obtain prefiling approval of conspiracy claims does not warrant dismissal of other claims not requiring prefiling approval. (*Alden v. Hindin* (2003) 110 Cal.App.4th 1502, 1508 (*Alden*).) In *Alden*, the complaint alleged two causes of action, one for conspiracy against the attorney, and one for malicious prosecution. (*Id.* at p. 1504.) The trial court found both claims subject to a motion to strike under section 1714.10 because that section required approval to file a pleading containing a conspiracy claim. (*Id.* at p. 1506.) *Alden* reversed because although the malicious prosecution cause of action was directed at both defendant and her attorneys, it did not charge attorneys with liability for conspiring with their client but, instead, alleged that attorneys themselves had acted without probable cause and with malice in bringing suit against plaintiff. (*Ibid.*) As explained in *Alden*, "noncompliance with section 1714.10, subdivision (a) would require dismissal of otherwise exempt causes of action for actual fraud [citation], breach of

10

fiduciary duty [citation], or for that matter any other claims against the attorney [citation], if a conspiracy cause of action subject to section 1714.10 were asserted along with them. There is no evidence that the drafters of section 1714.10 intended such a gratuitously destructive result, and the language of subdivision (b) clearly shows that they did not." As a result, although the conspiracy claim was properly stricken, because the malicious prosecution claim was not based on allegations of conspiracy, *Alden* held the trial court erred in dismissing that claim. (*Id.* at p. 1508.)

Thus, those claims that are not conspiracy claims would survive the demurrer. That does not, however, makes those claims cognizable in this appeal because such claims are before this court on an order overruling a demurrer, which order does not constitute an appealable order. (See *Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.* (2005) 131 Cal.App.4th 802, 821 (*Berg*).) Thus, our review is limited to whether the trial court properly denied defendants' demurrer to plaintiffs' causes on the basis that such claims asserted claims for conspiracy between an attorney and the attorney's client. (*Evans*, *supra*, 65 Cal.App.4th at p. 604, fn. 4 [§ 1714.10, subd. (d) does not authorize review of matters apart from issues related to § 1714.10].) We therefore do not review whether those nonconspiracy claims state causes of action.

## II. The Second Cause of Action for Conspiracy is Subject to a Motion to Strike

A plaintiff must obtain a prior court order before filing an action against an attorney that includes a claim for civil conspiracy with a client arising from any attempt to contest or settle a claim while representing the client. (Civ. Code, § 1714.10, subd. (a); see *Hung v. Wang* (1992) 8 Cal.App.4th 908, 924–925; *Rickley v. Goodfriend* (2013) 212 Cal.App.4th 1136, 1158.) The purpose of section 1714.10 is to discourage frivolous claims that an attorney conspired with his or her client to harm another. Therefore, rather than requiring the attorney to defeat the claim by showing it is legally meritless, plaintiff must make a prima facie showing before being allowed to assert the claim. (*Stueve v. Kahn* (2013) 222 Cal.App.4th 327, 329.)

11

"Section 1714.10 prohibits the unauthorized filing of an action for nonexempt civil conspiracy against an attorney based on conduct arising from the representation of a client that is in connection with any attempt to contest or compromise a claim or dispute." (*Berg*, *supra*, 131 Cal.App.4th at p. 815.) Section 1714.10 "was enacted to combat 'the use of frivolous conspiracy claims that were brought as a tactical ploy against attorneys and their clients and that were designed to disrupt the attorney-client relationship.'" The statute thus performs a "'gatekeeping' function and requires a plaintiff to establish a reasonable probability of prevailing before he or she may pursue a cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute." (*Stueve v. Kahn*, *supra*, 222 Cal.App.4th at p. 329.) "Applying section 1714.10 thus requires the court to initially determine whether the pleading falls either within the coverage of the statute or, instead, within one of its stated exceptions." (*Berg*, at p. 818.)

In *Berg*, *supra*, 131 Cal.App.4th 802, the court addressed the scope of section 1714.10 and, in particular, discussed the requirement that the action be one for civil conspiracy between an attorney and his or her client. The court found that section 1714.10 was applicable to the entirety of the plaintiff's complaint, "without regard to the labels attached to the causes of action or whether the word 'conspiracy'—having no talismanic significance—appears in them. The particular allegations throughout [the plaintiff's] entire complaint of the union of conduct between attorney and client arising out of the legal representation, the absence of other allegations of independent conduct by [the defendant's attorney], and the incorporation of conspiracy allegations into every cause of action, more than suffice to subject all the claims against [the attorney] to the initial coverage of section 1714.10, as provided in subdivision (a)." (*Berg*, at p. 824.)

The first exception to section 1714.10 the independent duty exception, "obviously speaks to a relationship beyond that of attorney-client." (*Evans*, *supra*, 65 Cal.App.4th at p. 605.) An independent legal duty may also arise when an attorney engages in conduct that goes "way beyond the role of [a] legal representative." (*Burtscher v. Burtscher*

12

(1994) 26 Cal.App.4th 720, 727.) "'Attorneys are expected to stay within the bounds of law in representing their clients and advising about an appropriate course of action . . . . Counsel who circumvent established legal channels to accomplish a desired result, participating with the client in a scheme to dispossess the other spouse of his or her claimed property or possessory rights, are not performing the "normal services of an attorney." Conduct of this sort exposes counsel to a host of tort claims—including a cause of action for attorney-client conspiracy.'" (*Rickley v. Goodfriend*, *supra*, 212 Cal.App.4th at p. 1154, italics omitted.)

Thus, an attorney has an independent legal duty to refrain from defrauding nonclients. For example, a conspiracy claim may be brought where a corporation and its attorney conspire to conceal from potential investors that other investors have threatened litigation against the venture. (*Pavicich*, *supra*, 85 Cal.App.4th at p. 397.) A conspiracy claim is proper where an insurance company's coverage counsel misrepresents the policy limits to a party that has obtained a judgment against the company's insured. (*Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 84–85.) Attorneys had an independent legal duty not to interfere with the remediation plan of their clients instituted on behalf of the plaintiffs and had a duty to fairly disburse remediation funds held in the attorneys' trust account. (*Rickley v. Goodfriend*, *supra*, 212 Cal.App.4th at p. 1158.)

The second exception applies to actions taken in furtherance of the attorneys' financial gain and means that through the conspiracy, the attorney derived economic advantage over and above monetary compensation received in exchange for professional services actually rendered on behalf of a client. (*Berg*, *supra*, 131 Cal.App.4th at p. 835.) This exception does not apply to fees charged, even where the fees were excessive or the services unnecessary. "Such allegations could be made by an adversary in any case, thus significantly weakening the gatekeeping function of the statute." (*Id.* at p. 836.)

### A. Application to Second Cause of Action for Conspiracy

Here, we find the second cause of action of the first amended complaint for conspiracy does not fall within the two exemptions of section 1714.10 because it does not allege any duty of defendants Festa or Milbank that is beyond the duty inherent in the rendition of services of an attorney to a client, nor does it allege any financial gain that goes beyond that to be realized through compensation paid for professional legal services.

First, the existence of an attorney-client relationship between Festa/Milbank and the individual plaintiffs Klotz and Spitz is not determinative of whether a conspiracy claim against those defendants survives a motion to strike. Festa/Milbank's conduct here consisted of an allegedly harmful conflict of interest and did not arise out of the breach of any duty independent of the attorney client relationship, but instead arose in the course of the provision of services in connection with the settlement of a claim or dispute, namely, Bruce's withdrawal from the partnership and request for advice on a new business opportunity that potentially conflicted with SageMill's interests. Therefore, it cannot be the basis of a conspiracy claim.

In that regard, this case differs from the cases in which the court found an independent duty. For example, in *Pavicich*, *supra*, 85 Cal.App.4th 382, the attorney conspired to conceal material information from investors and thus engaged in conduct beyond the provision of legal services, and violated an independent duty. (*Id.* at p. 397.) In *Rickley v. Goodfriend*, *supra*, 212 Cal.App.4th 1136, the attorney conspired with the client to assist the client in avoiding the client's remediation obligations, and thus engaged in conduct that violated a duty beyond the duties embodied in the provision of legal services. (*Id.* at p. 1158.)

Second, plaintiffs have not pleaded any financial gain sufficient to evade the bar of section 1714.10. The fact that Festa/Milbank would obtain more fees through representing Bruce as a more lucrative solo client rather than as a member of SageMill does not constitute financial gain within the meaning of the statute. (*Berg*, *supra*, 131 Cal.App.4th at p. 835.)

As a result, the order of the trial court denying defendants' special motion to strike is reversed, and plaintiffs must obtain a court order before filing such claims. (§ 1714.10, subd. (a).)

## B.       Plaintiffs' Remaining Causes of Action

On the remaining two claims for breach of fiduciary duty and legal malpractice, the individual plaintiffs' claims do not rely on the conspiracy allegations that defendants assisted Bruce in withdrawing from the partnership and usurping the corporate opportunity, but are founded on an alleged attorney-client relationship between the individual plaintiffs, either directly or derivatively through the SageMill entity as its partners, and later members. (See, e.g., *Johnson v. Superior Court* (1995) 38 Cal.App.4th 463, 476–477 [factors considered in determining whether attorney-client relationship with partnership also encompassed the individual partners of the partnership].) Plaintiffs first and third causes of action are based upon defendants' alleged conflict of interest (breach of the duty of loyalty) and malpractice (breach of the duty of care) based on defendants' duty to them as alleged clients. (See *Alden*, *supra*, 110 Cal.App.4th at p. 1508.) These non-conspiracy claims are not reviewable in this appeal because an order overruling a demurrer is not appealable. Therefore, we do not consider whether such claims would survive demurrer in the context of a motion to strike under section 1714.10, and the trial court's order denying defendant's motion to strike those claims is affirmed.

15

## DISPOSITION

The order is reversed to strike the second cause of action for conspiracy asserted on behalf of individual plaintiffs Klotz and Spitz.  In all other respects, the order is affirmed.  The parties are to bear their own costs on appeal.


JOHNSON, J.

We concur:


ROTHSCHILD, P. J.


BENDIX, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ADAM M. KLOTZ et al., Plaintiffs and Respondents, v. MILBANK, TWEED, HADLEY & MCCLOY et al., Defendants and Appellants. | B255827 (Los Angeles County Super. Ct. No. BC517937) CERTIFICATION AND ORDER FOR PUBLICATION |

      The opinion in the above-entitled matter filed June 30, 2015, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports with the exception of the part II subpart B of the Discussion and it is so ordered.


ROTHSCHILD, P. J.                JOHNSON, J.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for partial publication with the exception of part II subpart B of the Discussion.