Filed 7/31/18; Modified and certified for publication 8/21/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CHRISTINA CORTESE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>JOHN M. SHERWOOD, Individually and as Co-Trustee, etc.,<br><br>    Defendant and Appellant. | A152351<br><br>(San Francisco County<br>Super. Ct. No. PTR 16-300479) |

John M. Sherwood appeals the trial court's order overruling his demurrer to Christina Cortese's cause of action asserting third-party liability for breach of trust. Cortese's first amended petition alleges her stepfather, Robert A. Naify, breached fiduciary duties to her mother, Francesca P. Naify, and to Francesca's trust.[1] Sherwood was Robert's attorney. The petition alleges Sherwood participated in Robert's breaches of trust. Sherwood demurred on the ground Cortese failed to comply with the prefiling requirements of Civil Code section 1714.10.[2] In overruling Sherwood's demurrer, the trial court determined Cortese did not "facially bring an action under Civil Code § 1714.10[.]" We disagree and reverse.

---

[1] Because Mr. and Mrs. Naify have the same surname, we refer to them by their first names for clarity, intending no disrespect.

[2] All undesignated statutory references are to the Civil Code.

1

FACTUAL AND PROCEDURAL HISTORY

We focus on the allegations relevant to the issue on appeal. Cortese is the biological daughter of Francesca, and the stepdaughter of Robert, both of whom are deceased. Over the course of Francesca's and Robert's 23-year marriage, they "acquired an enormous amount of wealth." Sherwood "attended to all of their legal matters under Robert's direction. As their estate planning attorney, [Sherwood] also prepared the estate plans for both Francesca and Robert."

Cortese alleges her stepfather promised her that, upon his death, she would inherit a golf course in Marbella, Spain, and the underlying 250 acres of land. Robert also promised "he would treat her equally as his other children in his estate plan when he died, which would, in turn, make her a wealthy woman." However, after Robert's death in April 2016, the co-trustees of Robert's trust—one of whom is Sherwood—informed Cortese she "was not a beneficiary of Robert's estate[.]"

Sherwood drafted Francesca's will, and he represented Robert as executor during the administration of Francesca's estate. At the time of Francesca's death in 1997, Robert was worth an estimated $2 billion, but Francesca's estate "included only a small fraction of her community property share of the couple's immense wealth." Francesca's estate was valued "at a modest $2 million . . . at the time of her death[.]" These assets were distributed to Francesca's trust, and Robert became the sole successor trustee of her trust. Sherwood drafted Francesca's trust, and, under its terms, Robert was the life beneficiary, while Cortese and her sister were the remainder beneficiaries.

Cortese alleges that, during the administration of her mother's estate, she "questioned Robert and [Sherwood] about the low value of the Estate. On separate occasions, Robert and [Sherwood] told [her] that the Estate was devalued for tax purposes." Cortese alleges Sherwood told her "she had no reason to be concerned about the value of her mother's Estate because [Cortese] would become a very wealthy woman upon Robert's death, confirming, from [Cortese's] perspective, Robert's promises regarding her inheritance." "Relying on Robert's promises and [Sherwood]'s representations, [Cortese] did not challenge Robert's acts as executor."

2

In June 2008, Francesca's trust was valued at about $31 million, but, by May 2009, its value had dropped to about $16.6 million. Cortese alleges Robert failed to diversify the trust's assets. Nonetheless, Cortese "was induced not to act on her concerns regarding Robert's mismanagement of the Trust because Robert and [Sherwood] again affirmed the promises and representations previously made."

Around 2008, Cortese's sister requested a distribution from Francesca's trust. For tax reasons, Robert and Sherwood proposed early termination of the trust. "Over the course of the discussions regarding termination, [Sherwood], who represented Robert, . . . offered his analysis and assessment regarding early termination to" Cortese and her sister, and he advised them on the tax consequences. When Cortese questioned the relatively modest initial funding of Francesca's trust, Sherwood told Cortese "that she would receive a much larger inheritance from Robert's estate, which was consistent with his earlier statement that [Cortese] would be a very wealthy upon Robert's death. Thus, [Sherwood] stated that the value of the Trust at termination was of no consequence to her." "In reliance on the promises, [Cortese] reluctantly agreed to terminate the Trust, and she did so without the advice of counsel."

Cortese alleges the terms of the termination of Francesca's trust favored Robert because it was structured in a way that caused Cortese and her sister to bear unnecessary capital gains tax. Cortese alleges she "relied on Robert's promises and [Sherwood]'s assurances, which induced her to agree to early termination and not to challenge Robert's administration of the Trust." Francesca's trust was terminated in March 2009. Robert died in April 2016, which was when Cortese learned she was not a beneficiary of Robert's estate.

Cortese's initial petition asserted three causes of action: (1) breach of fiduciary duty against Sherwood and Edward C. Topham, as co-trustees of Robert's trust; (2) third party liability for breach of trust against Sherwood individually; and (3) return of trust property against Sherwood and Topham, as co-trustees of Robert's trust. Sherwood, in his individual capacity, demurred to the second cause of action, and the court sustained his demurrer with leave to amend. The court's order sustaining Sherwood's first

3

demurrer does not explain the basis for the court's ruling, but Sherwood had demurred on the ground the second cause of action failed to comply with section 1714.10.

Cortese filed a first amended petition, asserting the same three causes of action. Sherwood, in his individual capacity, filed another demurrer to the second cause of action. This time, the court overruled the demurrer, determining Cortese's second cause of action "does not facially bring an action under Civil Code § 1714.10[.]" Sherwood timely appeals.

## DISCUSSION

On appeal, Sherwood contends the trial court should have sustained his demurrer to the second cause of action because Cortese did not comply with the requirements of section 1714.10 before filing it. We reverse the trial court's order overruling the demurrer because, based on her allegations, Cortese's second cause of action must be construed as alleging a conspiracy between Sherwood and Robert, and Sherwood's alleged conduct does not fall within the statutory exceptions.

### I.

*Cortese Was Required to Obtain Court Approval to File Her Second Cause of Action*

Sherwood argues Cortese cannot avoid the requirements of section 1714.10 by "applying a label other than 'conspiracy' to her claim," that her claim arises from a compromise of a dispute, and that the section 1714.10, subdivision (c) exceptions do not apply. We begin with a review of the statute.

A. *The Prefiling Requirements for Conspiracy Claims Against Attorneys*

A party must establish a reasonable probability of prevailing before pursuing a "cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute[.]" (§ 1714.10, subd. (a).) The court makes this determination after considering a plaintiff's verified petition accompanied by the proposed pleading, "supporting affidavits stating the facts upon which the liability is based," and any opposing affidavits. (*Ibid.*) However, "[t]his section shall not apply to a cause of action against an attorney for a civil conspiracy with his or her client, where (1) the attorney has an independent legal duty to the plaintiff, or

4

(2) the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain." (§ 1714.10, subd. (c).)

Section 1714.10 was enacted to combat "the use of frivolous conspiracy claims that were brought as a tactical ploy against attorneys and their clients and that were designed to disrupt the attorney-client relationship." (*Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.* (2005) 131 Cal.App.4th 802, 816 (*Berg & Berg*).) The subdivision (c) exceptions were added to the statute three years after its enactment to limit its scope and application. (*Id.* at p. 818.)

The exceptions mirror the limits on an attorney's liability for conspiracy established by our Supreme Court in *Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39 (*Doctors' Co.*). As explained by our Supreme Court, " '[t]he elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design . . .' " (*Id.* at p. 44.) A cause of action for conspiracy cannot lie "if the alleged conspirator, though a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing and was acting only as the agent or employee of the party who did have that duty." (*Ibid.*)

This statement derives from the agent's immunity rule, which holds that " 'an agent is not liable for conspiring with the principal when the agent is acting in an official capacity on behalf of the principal.' " (*Panoutsopoulos v. Chambliss* (2007) 157 Cal.App.4th 297, 304, quoting *Pavicich v. Santucci* (2000) 85 Cal.App.4th 382, 394 (*Pavicich*).) However, an attorney may be liable for conspiracy if the attorney acts "in furtherance of the attorney's own financial gain," or if the attorney violates his or her "own duty to the plaintiff," such as by committing fraud. (*Doctors' Co.*, *supra*, 49 Cal.3d at pp. 46–47.) As recognized by a number of courts, "the effect of the amendment on the statute's application is anomalous. Since the statute now removes from its scope the two circumstances in which a valid attorney-client conspiracy claim may be asserted, its gatekeeping function applies only to attorney-client conspiracy claims that are not viable

5

as a matter of law in any event." (*Berg & Berg*, *supra*, 131 Cal.App.4th at p. 818; *Pavicich*, *supra*, 85 Cal.App.4th at pp. 394–396.)

An order overruling a demurrer based on section 1714.10 is directly appealable. (*Klotz v. Milbank, Tweed, Hadley & McCloy* (2015) 238 Cal.App.4th 1339, 1348–1349 (*Klotz*).) "We review the trial court's interpretation of section 1714.10 under the de novo standard." (*Central Concrete Supply Co. v. Bursak* (2010) 182 Cal.App.4th 1092, 1098.) "Applying section 1714.10 . . . requires the court to initially determine whether the pleading falls . . . within the coverage of the statute[.]" (*Berg & Berg*, *supra*, 131 Cal.App.4th at p. 818.) "Once it is determined that the pleading falls within the coverage of subdivision (a) of section 1714.10, the next step is to ascertain whether the pleaded claims fall within either of the exceptions set forth in subdivision (c) of the statute." (*Stueve v. Kahn* (2013) 222 Cal.App.4th 327, 331 (*Stueve*).)

### B. *Cortese's Second Cause of Action Falls Within the Coverage of Section 1714.10, Subdivision (a)*

Cortese asserts her second cause of action against Sherwood in his capacity as Robert's attorney, and it is labeled "third-party liability for breach of trust." Nonetheless, based on the allegations that underpin this cause of action, we conclude Cortese alleges Sherwood conspired with Robert. The first amended petition also alleges this conspiracy arose from an "attempt to contest or comprise a claim or dispute[.]" (§ 1714.10, subd. (a).) Accordingly, the second cause of action falls within the coverage of the statute.

#### 1. *Cortese Alleges a Civil Conspiracy between Sherwood and Robert*

Cortese alleges Sherwood participated in Robert's breaches of his fiduciary duties by "assisting Robert in effectuating his plan" of withholding community property from Francesca's estate, devaluing Francesca's estate, mismanaging her trust, and terminating it in a manner that benefited Robert. Sherwood is also alleged to have persuaded or "induced" Cortese not to challenge Robert's actions as executor of Francesca's estate and trustee of her trust, and to agree to early termination of Francesca's trust, by representing she would receive a large inheritance from Robert's estate when he died.

6

Cortese does not expressly allege Sherwood conspired with Robert, but a cause of action can still fall "within the initial scope of section 1714.10 . . . without regard to the labels attached to the cause[ ] of action or whether the word 'conspiracy'—having no talismanic significance—appears in them." (*Berg & Berg*, *supra*, 131 Cal.App.4th at p. 824.) We review the factual allegations underlying Cortese's second cause of action to determine whether it alleges a conspiracy, no matter what labels are used. (*Ibid.*)

Considering Cortese's allegations, we cannot conceive how Sherwood could have participated in Robert's alleged breaches of fiduciary duty without an implied agreement to do so. (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 785 ["the requisite concurrence and knowledge ' " ' "may be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances.' " ' "].) Cortese alleges, for example, that Sherwood "participated in Robert's breaches by knowingly and intentionally assisting in Robert's underfunding of Francesca's Estate and Trust and by structuring the termination of Francesca's Trust" in a manner that benefited Robert. Accepting the truth of these allegations, then there must have been an agreement between Robert and Sherwood to effectuate this " 'common plan' " or design. (*Berg & Berg*, *supra*, 131 Cal.App.4th at p. 823.)

In arguing otherwise, Cortese contends "California case law relating to trusts and estates recognizes a cause of action for participation in a breach of trust as an independent tort." We agree in part and disagree in part. California law recognizes an attorney can be liable for participating in a trustee's breach of fiduciary duty to a beneficiary, but the tort is not independent; instead, it is dependent on the trustee's fiduciary duty. As explained in *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445 (*Atascadero*), "[t]he rights of trust beneficiaries vis-à-vis third parties who participate in a breach of trust ultimately derive from the obligations of the trustee himself." (*Id.* at p. 462.)

The elements of a cause of action for an attorney's participation in breach of trust are active participation and conduct in furtherance of the attorney's "own financial gain." (*Pierce v. Lyman* (1991) 1 Cal.App.4th 1093, 1104 (*Pierce*); see also *Atascadero*, *supra*,

7

68 Cal.App.4th at p. 464 ["trust beneficiaries may sue third parties who participated with a trustee in alleged breaches of trust, as long as the third parties' participation was both active and for the purpose of advancing their own interests or financial advantage."].) In *Pierce*, there were allegations of active participation in a trustee's breach of trust because the attorneys were alleged to have "purposefully drafted and filed annual accountings with the probate court in order to conceal those breaches from the court." (*Pierce*, *supra*, 1 Cal.App.4th at p. 1105). There were also allegations of conduct in furtherance of the attorneys' own financial gain because they engaged in self-dealing by gaining " 'access to investments on a preferential basis[.]' " (*Ibid*.)

We do not suggest a cause of action for participation in breach of trust must always be viewed as giving rise to a civil conspiracy. Certainly, we can conceive of circumstances where an attorney could be liable for participation in breach of trust, but where the attorney could not be viewed as a coconspirator of the trustee. For example, if a trustee were to fail to keep the beneficiary informed regarding the trust's administration, and if, unbeknownst to the trustee, the trustee's attorney were to engage in self-dealing by transferring trust property to him or herself, then the beneficiary could state a cause of action against the attorney for participation in breach of trust, but there would be no basis for concluding there was an agreement or plan between the attorney and the trustee to engage in the conduct amounting to a breach of trust.

But here, Cortese's allegations imply an agreement between Robert and his attorney: she alleges Sherwood "joined the wrongful conduct by assisting Robert in effectuating his plan during the administration of Francesca's Estate and Trust." Cortese alleges Sherwood "participated in Robert's breaches by dictating the terms of the termination agreement that substantially benefited Robert" and harmed Cortese, and Sherwood "substantially assisted Robert" by inducing Cortese not to worry about the value of Francesca's trust or the terms of the termination agreement. Thus, Cortese alleges a "union of conduct between attorney and client, [and] . . . the absence of other allegations of independent conduct" by Sherwood. (*Berg & Berg*, *supra*, 131

8

Cal.App.4th at p. 824.) Accordingly, we must construe the allegations underlying Cortese's second cause of action as falling within the initial coverage of section 1714.10.[3]

Cortese relies on *Alden v. Hindin* (2003) 110 Cal.App.4th 1502 (*Alden*), where the court determined the prefiling requirements of section 1714.10 did not apply to a cause of action against attorneys for malicious prosecution. (*Alden*, at p. 1506.) But, unlike the plaintiff in *Alden*, Cortese does not allege Sherwood engaged in independent wrongful conduct; instead, she alleges he participated in Robert's breaches of his fiduciary duties. As currently pled, Cortese's cause of action against Sherwood for participation in breach of trust falls within the scope of a claim for civil conspiracy.

### 2. *Cortese Alleges Sherwood's Conduct Arose from an Attempt to Contest or Compromise a Claim or Dispute*

The prefiling requirements of section 1714.10 apply to a "cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client[.]" (§ 1714.10, subd. (a).) Here, the alleged conduct arose from an attempt to compromise a dispute because Cortese alleges Sherwood "induced [her] into foregoing any challenges to Robert's actions as executor and trustee by stating that she should not worry about the valuations as she would be a very wealthy woman at Robert's death."

The phrase "arising from any attempt to contest or compromise a claim" suggests the statute's prefiling requirements apply "to situations in which the alleged conspiracy arose from the attorney's representation of his or her client in a previous or current legal

---

[3] In making this determination, we have not relied on *Howard v. Superior Court* (1992) 2 Cal.App.4th 745, where the court determined an aiding and abetting count was sufficiently similar to allegations of a civil conspiracy to fall "within the ambit of former section 1714.10[.]" (*Id.* at p. 749.) The 1991 amendments narrowed the statute's application, but, even so, Cortese's allegations fall within its scope. We also offer no opinion on Sherwood's suggestion that Cortese's second cause of action is the same as one for " 'aiding and abetting breach of fiduciary duty.' " Instead, focusing on Cortese's allegations, and assuming that Robert's conduct was wrong, we cannot conceive how Sherwood could have done what Cortese alleges he did without an implicit agreement with Robert " 'to join the wrongful conduct.' " (*Berg & Berg*, *supra*, 131 Cal.App.4th at p. 823, fn. 10.)

9

dispute or litigation with the plaintiff." (*Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 209, fn. 16.) But the dispute need not have matured into litigation for section 1714.10's prefiling requirements to apply. For example, in *Klotz*, *supra*, 238 Cal.App.4th at page 1352, the court determined a partner's request for advice from an attorney on a new business opportunity that potentially conflicted with the interests of a partnership constituted "the provision of services in connection with the settlement of a claim or dispute[.]" Similarly here, Cortese's allegations that Sherwood induced her not to challenge Robert's actions as executor of Francesca's estate and trustee of her trust qualify as conduct arising from the compromise or settlement of a dispute.

In arguing otherwise, Cortese cites *Hung v. Wang* (1992) 8 Cal.App.4th 908 (*Hung*), and claims "the legislative history of . . . section 1714.10 clearly shows it was written to prohibit conspiracy claims from being filed *during litigation* in an effort to disrupt a party's relationship with its counsel." But, in *Hung*, *supra*, 8 Cal.App.4th at page 920, the court notes the statute was introduced to address problems faced by defense counsel for insurance companies during "threatened and actual litigation[.]" In any event, *Hung* was decided based on the former version of section 1714.10, and the court did not construe the meaning of the phrase "arising from any attempt to contest or compromise a claim," which language was added to the statute as part of the 1991 amendments. (*Hung*, at p. 915, fn. 1.)

Cortese also relies on *Stueve*, *supra*, 222 Cal.App.4th at page 331, where the court held the defendants' alleged schemes did not fall within the plain wording of the statute because the claims "arose from transactional activities—the siphoning off of assets through fraudulent estate planning, including the misappropriation of the [plaintiffs'] assets through the diversion of those assets to entities created and controlled by the defendants, including [the attorneys'] other clients." Cortese's reliance on *Stueve* is inapposite because Cortese alleges she did question and challenge Robert's conduct, but was induced not to act on her concerns by representations about her inheritance. Accordingly, the first amended petition sufficiently alleges the compromise of a dispute.

C.      *The Statutory Exceptions Do Not Apply*

Next, we consider whether Cortese sufficiently alleges Sherwood owed her an independent legal duty, or whether his alleged conduct was "in furtherance of the attorney's financial gain." (§ 1714.10, subd. (c).)  We conclude Cortese's allegations are not sufficient to qualify for one of the statutory exceptions.  Therefore, Cortese should have sought court approval before filing her second cause of action.

1.      *No Allegations Support an Independent Legal Duty Owed By Sherwood to Cortese*

With regard to the first statutory exception, and relying on cases like *Pierce*, *supra*, 1 Cal.App.4th at page 1105, Cortese contends Sherwood "had a legal duty to [her] to refrain from knowingly and actively participating and assisting Robert in his breaches of trust, which caused [her] harm."   But, as explained *ante*, the duty underlying this tort is a trustee's fiduciary duty to a beneficiary, not an independent legal duty owed by the attorney to the beneficiary.  (*Atascadero*, *supra*, 68 Cal.App.4th at p. 462.)

Cortese alleges Sherwood was Robert's attorney, and there is no allegation he represented her.  " ' "[T]he attorney for the trustee of a trust is not, by virtue of this relationship, also the attorney for the beneficiaries of the trust.  The attorney represents only the trustee." [Citations.]' . . . The fact that estate beneficiaries may be benefited by the attorney's representation 'does not give rise to a duty by the attorney to such third parties. . . .' [Citation.] . . . In these contexts in which the attorney represents a fiduciary, it is to the client trustee or administrator alone that the attorney owes duties . . . . This rings especially true where, as here, the attorney's client and the third party are adverse, as the attorney's duty of loyalty to his or her client cannot be divided or diluted by a duty owed to a third party. [Citation.]" (*Berg & Berg*, *supra*, 131 Cal.App.4th at p. 826.)

Cortese alleges Sherwood made certain statements to her, including that "she would be a very wealthy woman at Robert's death," that "induced [her] into foregoing any challenges to Robert's actions as executor and trustee[.]"  But Cortese never alleges Sherwood's statements to Cortese in 1997, around the time her mother died, or in 2009,

11

when Francesca's trust was terminated, were false when made. Robert, who died in 2016, could have later changed his still-revocable trust or failed to change it to conform to his promises to Cortese. Cortese's allegations against Sherwood are insufficient to state a claim for fraud. (*Pacesetter Homes, Inc. v. Brodkin* (1970) 5 Cal.App.3d 206, 211 [affirming judgment of no fraud where statements "were neither representations of existing facts nor opinion of the type upon which actionable fraud may be founded."].)

Sherwood is alleged to have "participated in Robert's breaches by dictating the terms of the termination agreement" in a manner that benefited Robert. Cortese suggests Robert took advantage of her and her sister because he knew Cortese was not represented by counsel in negotiating the terms of the termination agreement. But, for the exceptions to section 1714.10 to apply, Cortese must allege conduct by Sherwood *beyond* what was required of him as Robert's legal representative. (*Klotz*, *supra*, 238 Cal.App.4th at pp. 1351–1352.) We agree with Sherwood that, as Robert's attorney, he had "no duty to Ms. Cortese to protect her interests or advocate for her in negotiating the termination of" Francesca's trust. (*Berg & Berg*, *supra*, 131 Cal.App.4th at p. 826 [generally, an attorney who represents trustee owes duties to his client, not third parties].)

In *Pavicich,* the court stated that where an " 'attorney gives his client a written opinion with the intention that it be transmitted to and relied upon by the plaintiff in dealing with the client[,] . . . the attorney owes the plaintiff a duty of care in providing the advice because the plaintiff's anticipated reliance upon it is "the end aim of the transaction." ' " (*Pavicich*, *supra*, 85 Cal.App.4th at p. 395.) Relying on this statement, Cortese contends that Sherwood owed her and her sister a duty of care in advising them on the tax consequences of early termination of Francesca's trust.

But this statement in *Pavicich* derives from *Goodman v. Kennedy* (1976) 18 Cal.3d 335, where the court was discussing an attorney's potential liability to third parties for providing negligent advice to clients. (*Id.* at p. 343, fn. 4; *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104, 110 [noting attorney "may be liable if the third person who was intended to be benefited by his performance is injured by his negligent execution of that duty."].) Here, there is no allegation Sherwood was negligent

12

in providing advice to Christina and her sister. Instead, Cortese alleges Sherwood was following the instructions of his client, and thereby participating in the trustee's wrongful conduct. Because Sherwood is not alleged to have acted negligently, the hypothetical in *Pavicich* provides no basis for concluding Sherwood owed Cortese an independent legal duty.

Finally, to the extent Cortese implies that Sherwood had a duty to insure Robert kept his alleged promises to Cortese, "no duty or liability to the nonclient potential beneficiary has been recognized." (*Chang v. Lederman* (2009) 172 Cal.App.4th 67, 82; *Boranian v. Clark* (2004) 123 Cal.App.4th 1012, 1020 ["a lawyer who is persuaded of his client's intent to dispose of her property in a certain manner, and who drafts the will accordingly, fulfills his duty of loyalty to his client and is not required to urge the testator to consider an alternative plan in order to forestall a claim by someone thereby excluded from the will . . . ."].)

### 2. *Whether Sherwood Acted to Further His Own Financial Gain*

Nor does Cortese sufficiently allege conduct by Sherwood beyond his role as Robert's agent and "in furtherance of the attorney's financial gain." (§ 1714.10, subd. (c).) For this exception to the application of section 1714.10 to apply, there must be allegations the attorneys were acting " 'as individuals for their individual advantage' and not solely on behalf of the principal." (*Doctors' Co.*, *supra*, 49 Cal.3d at p. 47.)

Here, Cortese alleges Sherwood "obtained a personal advantage not only in the form of fees, but also in preserving, on information and belief, his sole source of income as Robert's trusted advisor, personal and estate planning lawyer and general counsel for Robert's companies." Cortese also alleges Sherwood received fees in relation to other trusts he established for Robert. But these allegations that Sherwood continued to receive fees for performing legal work, or as Robert's business adviser, do not indicate Sherwood obtained "a personal advantage or gain that is over and above ordinary professional fees earned as compensation for performance of the agency." (*Berg & Berg*, *supra*, 131 Cal.App.4th at p. 834.) "This exception does not apply to fees charged, even where the fees were excessive or the services unnecessary. 'Such allegations could be made by an

13

adversary in any case, thus significantly weakening the gatekeeping function of the statute.' " (*Klotz*, *supra*, 238 Cal.App.4th at p. 1351.)

Cortese also alleges Sherwood "personally benefited by ensuring gainful employment for his son . . . starting in February 1999." But most of the misconduct in which Sherwood is alleged to have participated occurred years later. Sherwood is alleged to have participated in Robert's mismanagement of Francesca's trust, which dropped in value in 2008 to 2009, and he allegedly "participated in Robert's breaches by dictating the terms of the termination agreement that substantially benefited Robert[.]" Because this conduct occurred after his son was employed by one of Robert's companies, it could not have been motivated by a desire to obtain that benefit.

Even with regard to the earlier alleged misconduct—"the withholding of community property and devaluing of Francesca's Estate and/or Trust"—we cannot reasonably infer Sherwood participated in this misconduct for the sake of obtaining employment for his son. Cortese alleges Sherwood was not only Robert's attorney, but was also "involved in all aspects of Robert's life as a confidant, a family friend, and . . . [Sherwood was] intimately involved in Robert's financial and legal affairs . . . ." As a friend and confidant of Robert, Sherwood is likely to have benefited from his relationship with Robert in many ways. But Cortese needs to allege more before we can plausibly infer Sherwood participated in Robert's withholding of community property or devaluing of Francesca's trust or estate for the sake of obtaining employment for his son.[4] In

---

[4] In her brief, Cortese contends there were other ways in which Sherwood personally benefited from his participation in Robert's breach of trust. We offer no opinion regarding these contentions because we focus on the allegations in the first amended petition, and our review of the court's order is limited to the applicability of section 1714.10. (*Klotz*, *supra*, 238 Cal.App.4th at p. 1349 ["our review is limited to whether the trial court properly denied defendants' demurrer to plaintiffs' causes on the basis that such claims asserted claims for conspiracy between an attorney and the attorney's client."]; *Evans v. Pillsbury, Madison & Sutro* (1998) 65 Cal.App.4th 599, 604, fn. 4 [section 1714.10, subdivision (d) does not authorize review of matters apart from issues related to section 1714.10].)

14

addition, we question whether obtaining employment for his son can be construed as conduct "in furtherance of the attorney's financial gain." (§ 1714.10, subd. (c).)

In short, the allegations in the first amended petition are not sufficient to qualify for the section 1714.10, subdivision (c) exceptions. Accordingly, section 1714.10 applies to Cortese's second cause of action, and she was required to obtain court approval before filing the claim.

## DISPOSITION

We reverse the trial court's order overruling Sherwood's demurrer to the second cause of action in the first amended petition. The matter is remanded to the trial court with directions to sustain the demurrer to Cortese's second cause of action with leave to make application to the trial court—in compliance with section 1714.10—to include the second cause of action in her petition. Sherwood is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

_____

Jones, P.J.

We concur:

_____

Simons, J.

_____

Bruiniers, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CHRISTINA CORTESE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JOHN M. SHERWOOD, Individually and as Co-Trustee, etc.,<br><br>        Defendant and Appellant. | A152351<br><br>(San Francisco County<br>Super. Ct. No. PTR 16-300479) |

ORDER MODIFYING OPINION AND CERTIFYING
OPINION FOR PUBLICATION

BY THE COURT:

The opinion in the above-entitled matter filed on July 31, 2018, is hereby certified for publication. For good cause it now appears that the opinion should be published pursuant to California Rules of Court, rule 8.1105(c).

It is further ordered that the opinion be modified as follows:

Delete the entire first paragraph on page 1, and insert the following:

Before a plaintiff may file a cause of action alleging an attorney engaged in a civil conspiracy with the attorney's client, Civil Code section 1714.10, subdivision (a) requires that plaintiff establish he or she has a reasonable probability of prevailing and obtain a prefiling order.[5] Here, we consider whether the statute applies to a claim against an attorney for participation in breach of trust. We conclude that, based on plaintiff Christina Cortese's allegations, and despite the absence of the language and label of

_____

[5] All undesignated statutory reference are to the Civil Code.

1

"conspiracy," her cause of action must be construed as alleging a conspiracy between the attorney and his client.  Plaintiff Cortese did not comply with the prefiling requirements of section 1714.10.  Moreover, we conclude the attorney's alleged conduct does not fall within the statutory exceptions.  Accordingly, the trial court should have sustained the attorney's demurrer to the cause of action.

Cortese's first amended petition alleges her stepfather, Robert A. Naify, breached fiduciary duties to her mother, Francesca P. Naify, and to Francesca's trust.[6]  John M. Sherwood was Robert's attorney.  Relying on section 1714.10, Sherwood demurred to Cortese's cause of action against him for participation in breach of trust.  In overruling Sherwood's demurrer, the trial court determined Cortese did not "facially bring an action under Civil Code § 1714.10[.]"  We disagree and reverse.

This modification does not effect a change in the judgment.

Date _____                                  _____ P.J.

---

[6] Because Mr. and Mrs. Naify have the same surname, we refer to them by their first names for clarity, intending no disrespect.

2

Trial court:                          San Francisco County Superior Court

Trial judge:                          Hon. John K. Stewart


Counsel:

Steven M. Kipperman, Kimberly A. Fanady, for Defendant and Appellant.

Bartko, Zankel, Bunzel, Miller, Benjamin K. Riley, for Defendant and Appellant.

Holland & Knight, Jamie B. Moses, Stacie Nelson, Kyong M. Kim, for Plaintiff and Respondent.

A152351